# Wheeling.

## HIRAM BLOSS *vs.* JOHN PLYMALE *et al.*

### January Term, 1869.

1. A party injured by co-trespassers may sue either one of the individuals against whom the action may be brought; he is not bound to prosecute all; and although a plea of abatement is permitted in case of non-joinder of debtors, the privilege is not extended to tort feasors, as all are regarded as principals, and neither the omission to sue all, nor if all are sued the dismissal of one of them from the suit, can be pleaded by the others in bar.

2. An absolute release of one joint trespasser discharges all the rest who participated in the act; but the release as a discharge for all, that has been given one only, must be a technical release, under seal, expressly stating the cause of action to be discharged without conditions or exceptions; and no release will be allowed by implication.

3. A release, not under seal, of one joint trespasser, or a satisfaction and discharge of the liability against him, which shows on its face that it was not the intention to satisfy and discharge the liability of the other joint trespassers, will not be allowed to work a discharge of the action.

4. A plaintiff in an action of trespass may sue all, or any, or either of the alleged trespassers, and he is entitled to full satisfaction, but to only one satisfaction; and if the damages have been in part satisfied by payment or compromise with some of the defendants, the plaintiff may still proceed against those who remain on the record. Therefore, it is not error for a receipt to one of the defendants from the plaintiff, for a sum already received on account of the alleged trespass, to be given in evidence to the jury, that such sum may be deducted in the finding.

5. B. brought an action of trespass against P. and others. Before pleas filed, B. executed a receipt for a sum of money to J., one of the defendants, in satisfaction of "all debts, dues and demands" to date. B. also dismissed the action as to three other defendants before trial. Defendants pleaded not guilty and accord and satisfaction to J., who was alleged in the plea to be a joint trespasser. On the trial the defendant read the summons and declaration in evidence. HELD:

    1. That it was not error to permit the summons to be read in evidence, for it was proper evidence to show the existence and date of the suit and who were original parties thereto.

2. That it was not error to permit the declaration and orders of dismissal to go in evidence for they were parts of the record. But the allegations of the declaration being put in issue by the plea of not guilty, which threw the burden of proof on the plaintiff, it could not be used by the defendants to prove or sustain the plea of accord and satisfaction The *onus probandi* to sustain the plea of accord and satisfaction being on the defendants they could not use the allegations of the declaration after having denied the same by the plea of not guilty.

3. The allegations in the plea of accord, that J. was a joint trespasser, which was denied by the general replication, could not be proved by the allegations in the declaration that he was such joint trespasser with them, but which was denied by the plea of not guilty, and the court should so have instructed the jury, if required ; but as the plaintiff asked no such instructions, but chose to rely upon his general objection to the evidence, there was no error in permitting the declaration to be given in evidence.

4. But inasmuch as there was no other evidence in the cause showing J. to have been a joint trespasser with the other defendants, which was indispensable to sustain the plea of accord alleged to have been made with him as one of the joint trespassers, the verdict for the defendants on that point was without evidence to warrant it, while the evidence on the general issue showed the defendants guilty, and should have been set aside.

6. No material fact can be supposed to have been omitted from a bill of exceptions where it is certified that, "the foregoing is all the evidence material in the cause," and such certificate is sufficient.

Hiram Bloss brought an action of trespass on the case in the circuit court of Wayne county to September rules, 1865, against John Plymale, Jesse Spurlock, Hurston Spurlock, William P. Shurlock, Hugh Bowen, M. J. Ferguson, James Ferguson, Achilles M. C. Davis, Edmund Osborn, Samuel Wellman and John Jarrell, Jr. The cause came on the docket and was continued at the December term, 1865. At June term, 1866, an order of dismissal was entered as to John Jarrell, Jr., by the plaintiff; and subsequently, before trial, the cause was discontinued as to Samuel Wellman, Hugh Bowen and Samuel Osborn. At the June term, 1866, the defendants pleaded not guilty, on which issue was joined. They also pleaded accord and satisfaction, on

which issue was joined.   This latter plea alleged that the plaintiff executed the following paper :

"Received of John Jarrell, Jr., seventy-five dollars, it being in full of all dues, debts and demands up to this date. March 22d, 1866.          (Signed)          HIRAM BLOSS."

which was executed after the suit was brought and before the day of pleading, and that the trespass having been jointly committed by the defendants and Jarrell, Jr., the acceptance of the 75 dollars above mentioned, was in full satisfaction and discharge of the supposed trespasses and all damages and costs.   They offered a further plea of being in the service of the so-called Confederate Government at the time of arresting and imprisoning the plaintiff, which plea was demurred to and the demurrer was sustained.

On the trial, which was had at the June term, 1866, the defendants read in evidence the receipt of the plaintiff to Jarrell.   He, also, to maintain the issues upon his part, introduced various witnesses, who proved that in the year 1861, at the time the rebellion was being organized against the United States in the county of Wayne, a call was made upon the militia of said county, to assemble at Wayne court-house, by the defendant, Hurston Surlock; that in pursuance of such call a large number of people assembled at said court-house, and among them the defendants, John Plymale, Jesse Spurlock, William P. Spurlock and James Ferguson; and the defendant, John Plymale, then and there made a speech to the people, and advised them to arm themselves, and move down toward the Ohio river for the purpose of driving the 5th Virginia regiment (which was a Federal regiment) across the Ohio river; that he said to one of witnesses he wanted some money to buy powder for the boys, and that he used these words to those assembled: 'Boys, ride their fat horses, and eat their fat cattle and hogs;' that he also, in the same year, administered to several persons the oath to support the Southern Confederacy, and said to one of the witnesses that unless he took said oath, his property would be confiscated; and to another, whose son went in the rebel army, that it was right for his

son to be there; that he left his home in said county, in 1861, and did not return until 1865, after the surrender of General Lee; that the defendants, Jesse Spurlock and William P. Spurlock were at said meeting with guns, and actively participated therein; that in the year 1861, at various times they were seen with their guns, and started with a party of armed rebels to attack the Federal troops at Guyandotte; that the said Jesse declared his purpose to fight said troops as long as he had a drop of blood in his body; that in the fall of 1861, the said Jesse and William P. Spurlock were arrested and taken to Wheeling, where they were kept for some six or eight weeks, when they returned home; that from that time until the end of the war, neither of them were ever seen in arms; that parties of rebel soldiers were several times at the house of said Jesse after that period; that in 1862 one of the witnesses, who was a prisoner in the hands of the rebels, was taken to his house, and when they got there they found a dinner prepared, and the whole party ate their dinners; that the said Jesse was at home at the time, and the provisions prepared were much more than were necessary for his family, it being a small one; that in April, 1863, after the arrest of the plaintiff, by the defendant Hurston Spurlock, and the party under his command, he was taken in their custody to the house of the said Jesse, who was at home at the time; and that all the party ate supper there, and remained some three or four hours, when they left; that in April, 1863, the plaintiff was arrested by the defendant Hurston Spurlock, and a party of rebel soldiers under his command, at his own house, in the night time; that he was taken thence to the house of the defendant Jesse Spurlock as aforesaid; and thence to the house of the defendant Achilles M. C. Davis, where the party was joined by the defendant Milton J. Ferguson, who was a colonel in the rebel army and in command of the whole party there assembled; that after remaining a few hours, the whole party left on their way to Richmond. While at Davis' the rebel troops were gathering in there, and that frequently during the war such troops were at his

house, and sometimes ate there; that said Davis, with six others, in 1861, was arrested by one of the witnesses, when they appeared to be hiding from him, and that the witness administered to them all the oath of loyalty to the United States and the reorganized government of Virginia; that the defendant James Ferguson was also at the gathering at Wayne court-house, in 1861, with a gun ; that in 1862, he took a lot of cattle in the direction of Tazwell county, Virginia, and that he told one of the witnesses that he intended to pasture part of the cattle and kill the balance for the soldiers; and while the plaintiff was on his way to Richmond, in custody as aforesaid, they saw James Ferguson at Jeffersonville, in the said county of Tazwell, where he shook hands with the plaintiff; that the party proceeded to Salem, Virginia, where they remained about a week, when the plaintiff was sent under guard to the city of Richmond, by the defendant Milton J. Ferguson, and was there imprisoned in Castle Thunder for the space of three weeks, when, upon taking an oath to remain neutral and obey the laws of the Confederate States of America, and not to take up arms against them while they held possession of the country, he was released and allowed to return home; that while in said prison the said plaintiff was compelled to live on scanty and sometimes unwholesome food, and was confined in a room about 20 feet by 30, with about forty prisoners, and with no bedding furnished by the authorities.

When the receipt was offered in evidence, the plaintiff admitted the execution of the receipt by him to Jarrell, Jr., but objected to the same being read in evidence, which objection was overruled by the court, and to which opinion the plaintiff excepted. The defendants also read in evidence the summons in this cause, which included all the names of the defendants first above mentioned.

They also read in evidence the declaration in the cause, which is in the words and figures following, to wit:

"*State of West Virginia*, *Wayne county*, *to wit*:

Hiram Bloss complains of John Plymale, Jesse Spurlock, William P. Spurlock, Hurston Spurlock, Hugh Bowen,

Milton J. Ferguson, James Ferguson, Achilles M. C. Davis, Edmund Osborn, Samuel Wellman and John Jarrell, Jr., of a plea of trespass on the case, for that heretofore, to wit: on the 10th day of April, 1863, at the county of Wayne, aforesaid, the said defendants unlawfully, and without any reasonable or probable cause, did arrest, seize, lay hold of, arrest and imprison the said plaintiff, and did then and there unlawfully, forcibly, and against the will of the said plaintiff, force and compel the said plaintiff to go with them to the city of Richmond, and did then and there unlawfully, forcibly, and against the will of the said plaintiff, confine and imprison him in a certain loathsome and filthy prison, for a long space of time, to wit: for the space of six months, during all of which time he was compelled by the said defendants to subsist upon unwholesome and insufficient food, by reason whereof the health of the said plaintiff became, and was, greatly impaired; and he was subjected to great suffering, hardships and expense, and has been, and is otherwise greatly injured, to wit: at the county aforesaid.

"And for that, also, afterwards, to wit: on the day and year aforesaid, at the county aforesaid, the said defendants, in and upon the body of the said plaintiff, did make an assault, and him, the said plaintiff, did then and there unlawfully, and without any reasonable or probable cause, arrest and imprison for a long space of time, to wit: for the space of six months; and other wrongs to the said plaintiff then did, to wit: at the county aforesaid.   Wherefore and by reason of the premises, the said plaintiff has been, and is, greatly injured, and sustained damages to the amount of 10,000 dollars.   And therefore he brings his suit."

They also read in evidence an order of the circuit court of Wayne county, made in the cause, at the June term, 1866, which is in the words and figures following, to wit:

"This day came the parties, by their attorneys, and it appearing to the court that an order was directed to be entered at the last term of this court, on motion of the plaintiff dismissing this cause, as to the defendant John Jarrell, Jr., which order was by mistake omitted to be entered by

the clerk; therefore, on motion of the plaintiff, by his attorney, this cause is dismissed as to the said defendant John Jarrell, Jr. And as this order should have been entered at the last term of this court, as aforesaid, the same is made now for them."

"Before the reading of the said summons, declaration and order, the plaintiff objected to their being so read; but the court overruled the said objection, to which opinions of the court the plaintiff excepted. And here the defendants rested their cause.

"The plaintiff then offered to prove, by divers witnesses, that the receipt read in evidence, by the defendants, was given to settle a claim against the said Jarrell for a horse, and not to settle the cause of action set out in the declaration in this suit, to which evidence the defendants objected, and the objection was sustained by the court, to which opinion of the court the plaintiff excepted."

"The foregoing was all the evidence material in the cause."

The plaintiff then asked the court to instruct the jury as follows :

"1st. If the jury believe from the evidence in this cause that John Plymale, Jesse Spurlock, William P. Spurlock, James Ferguson, Milton J. Ferguson, Achilles M. C. Davis and Hurston Spurlock combined for an unlawful purpose, and in the execution of that purpose, as a consequence of that unlawful combination, the plaintiff was arrested without probable cause, and imprisoned by any of the defendants, the law is for the plaintiff, with the plea of not guilty, and they must find for him such damages as they, in their discretion, may deem proper, not exceeding the amount laid in the writ.

"2d. That the receipt, which is presented in evidence in this cause, dated on the 22d day of March, 1866, and signed by Hiram Bloss, cannot operate as a release of the parties defendant.

"3d. To establish the plea of accord and satisfaction, the defendants must show that the subject matter of this action (that is the arrest and imprisonment of the plaintiff) was

accorded between the plaintiff and John J. Jarrell, Jr., and that the plaintiff agreed to, and did accept the 75 dollars mentioned in the said receipt, in full satisfaction of the cause of action in the declaration mentioned.

"4th. Unless the jury believe from the evidence that John Jarrell, Jr., was a co-trespasser with the present defendants in this action, in the arrest and imprisonment of the plaintiff in the declaration mentioned, then the receipt read in evidence in this cause, given by Hiram Bloss to John Jarrell, Jr., does not operate to bar plaintiff's right of recovery herein."

The court gave the first instruction and rejected the second, third and fourth, to which opinion of the court, rejecting said second, third and fourth instructions, the plaintiff excepted.

The court of its own motion, instructed the jury as follows:

"If you believe from the evidence that there was a general conspiracy entered into, one of the purposes of which was illegal arrests and imprisonment of citizens of the United States, and that the plaintiff was arrested in pursuance of that conspiracy, and if you further believe that the defendants, at the time of the arrest, were aiding in concert with the conspirators, by their acts, or by their advice and procurement, or if you believe that the arrest of the plaintiff was the result of the advice of the defendants, given at any time previous to the arrest, and not revoked, then you will find for the plaintiff, and assess his damages, otherwise for the defendant, unless they further believe from the evidence that the plaintiff accorded with John Jarrell, Jr., as stated in the defendants' third plea."

The defendants then asked the court to instruct the jury as follows:

"1st. That if they believe from the evidence in the cause that the defendants, in the year 1861, did encourage persons to go into the rebellion then being organized against the United States, and did themselves take up arms to aid and assist in the said rebellion, but that neither of the de-

fendants in any way aided or assisted in the arrest or imprisonment of the plaintiff, as charged in the declaration, or any way counseled or advised such arrest or imprisonment, that then they must find the defendants not guilty.

"2d. That if they believe from the evidence that any one or more of the defendants aided or encouraged the rebellion against the United States, in 1861, as stated in the first instruction, but that such defendant, or defendants, did not in any way aid or assist in the imprisonment of the plaintiff, as charged in the declaration, or encourage, advise, or counsel such arrest or imprisonment, that then they must find such defendant, or defendants, not guilty.

"That in order to authorize them to find any one or more of the defendants in this action guilty, they must believe from the evidence that such defendant, or defendants, actually participated in the arrest or imprisonment of the plaintiff, as charged in the declaration, either by aiding or assisting in such arrest or imprisonment, or by directing, or counseling, or advising the same.

"That if they believe from the evidence that the trespass, wrongs, and injuries in the plaintiff's declaration mentioned were done and committed by the present defendants, John Plymale and others, jointly with one John Jarrell, Jr., and that the said plaintiff accorded with John Jarrell, Jr., of and concerning the said trespasses, wrongs, and injuries, and that the said plaintiff received from the said John Jarrell, Jr., the sum of 75 dollars, in full satisfaction and discharge of the said trespass, wrongs and injuries on the part of the said John Jarrell, Jr., then that such accord and satisfaction enures to the benefit of all the other defendants, and the jury must find all the defendants not guilty.

"5th. That if they believe from the evidence that this suit was brought jointly against the defendants John Plymale, William R. Spurlock, Jesse Spurlock, Hurston Spurlock, Hugh Bowen, James Ferguson, Achilles M. C. Davis, Edmund Osborn, Milton J. Ferguson, and Samuel Wellman, together with the said John Jarrell, Jr., and that, af-

ter the commencement of said suit, the said plaintiff and the said John Jarrell, Jr., accorded together of and concerning the said trespasses, wrongs and injuries in the plaintiff's declaration mentioned, and that the said John Jarrell, Jr., upon such according, paid to the said plaintiff the sum of 75 dollars, in full satisfaction and discharge of the said trespass, wrongs and injuries on his part, and that the said plaintiff received from the said John Jarrell, Jr., the said sum of 75 dollars, in full satisfaction and discharge of the said trespass, wrongs and injuries on the part of said John Jarrell, and dismissed the said suit as to him, then that the said accord and satisfaction enures to the benefit of all the defendants to this suit, and they must find them all not guilty.

"6th. That if they believe from the evidence that the plaintiff in this suit, on the 22d day of March, 1866, and while this suit was pending, received from the said John Jarrell, Jr., the sum of 75 dollars in full of all dues, debts and demands against the said John Jarrell, Jr., up to that date; and that the said plaintiff executed and delivered the said John Jarrell, Jr., a receipt in full of all debts, dues and demands up to the said 22d day of March, 1866, against the said John Jarrell, Jr.; and that the said John Jarrell, Jr., was one of the defendants in this suit at the time of the payment and receipt of said money, and the execution and delivery of said receipt; and that the said plaintiff, at the first opportunty thereafter, dismissed this suit against the said John Jarrell, Jr., that in such case, the receipt of the said money, and the execution and delivery of said receipt, constitutes a good and satisfactory defence to the cause of action of the said plaintiff in this suit, and that the jury must find a verdict for all the defendants."

The court refused to give the first, second and third instructions, but gave the fourth, fifth and sixth instructions, to which opinions of the court, in refusing to give the first, second and third exceptions, the defendants excepted, and the plaintiff excepted to the opinion of the court in giving the fourth, fifth and sixth instructions.

The jury then retired, and after some time returned into court with verdict in favor of the defendants.

The plaintiff thereupon moved the court to set aside the verdict and grant him a new trial, upon the following grounds:

"1st. That said verdict was contrary to the law and the evidence.

"2d. Because of the misdirection of the judge in his instructions to the jury;" which motion was overruled by the court, and the plaintiff excepted.

The plaintiff brought the case here on a writ of supersedeas.

*G. W. Jeffers* for plaintiff in error.

*Lee & Boggess* for defendants in error.

BROWN, President.    This is an action of trespass on the case, under the statute authorizing case to be brought for a trespass *vi et armis.*

The action is against several defendants.    As to one of them, viz: John Jarrell, Jr., the case was dismissed by the plaintiff without trial and before plea.

All the rest pleaded the general issue, and also the plea of accord and satisfaction.    This plea alleges that the agreement of accord and satisfaction was made with the said John Jarrell, Jr., as one of the alleged trespassers, not for his part or participation only in the said trespasses, but in satisfaction and discharge of the alleged trespasses and all damages sustained by the plaintiff from all the said defendants. But before the trial the case was further discontinued by the plaintiff as to three other of the defendants.    In support of the plea of accord and satisfaction the remaining defendants offered in evidence the following paper, viz:

"Received of John Jarrell, Jr., seventy-five dollars, it being in full of all dues, debts and demands up to this day and date.    March 22d, 1866.        HIRAM BLOSS."

(U. S. Int. Rev. 2 cts. bank check.)

404     COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,     Bloss vs. Plymale et al.     1869.

Also the writ instituting the suit and the declaration in the case.

The plaintiff objected to this evidence, but his objection was overruled. He then offered to prove, by divers witnesses, that the receipt read in evidence by the defendants was given to settle a claim against the said Jarrell for a horse, and not to settle the cause of action set out in the declaration; but the evidence so offered was excluded by the court at the instance of the defendants, and the plaintiff again excepted.

The first inquiry is, as to the effect of the entries by which first Jarrell, and then three other of the defendants, were dismissed from the action; does it apply only to those named, or does it extend equally to all the defendants? It cannot be claimed that these dismissals, which were equivalent only to judgments of *nolle prosequi* at the common law, can operate either for or against the other defendants. No such effect would be produced even in a criminal case.

This was held in *Rex* vs. *Sergeant*, 12 Mod., 320, and is now the settled law.

In the case of *Parker* vs. *Lamon*, decided in the reign of James I, Hobart, 70, it was held that a judgment of *nol. pros.* as to one or more joint trespassers before judgment would discharge the action. But in the next reign that case was overruled, and the more rational doctrine held that a discontinuance as to one defendant was a mere agreement to relinquish the action as to him only, and he alone could take advantage of it, the plaintiff being still at liberty to proceed against the other defendants. *Wash* vs. *Bishop*, 3 Croke, 243. Since then the current of authority has been uniform on the point. *Noke* vs. *Ingham*, 1 Wilson, 90; *Dale* vs. *Eyre*, 306; 3 Term Rep., 511, *Cooper* vs. *Tiffin*. The cases are collected and approved by Williams in his work to *Salmon* vs. *Smith*, 1 Saunders, 202, note 2.

They establish fully the rule that a *nolle prosequi*, dismissal or discontinuance as to one defendant, before judgment, does not enure to the benefit of the others.

The principle which governs all these decisions implies

that the party injured by co-trespassers, or who is the creditor of co-debtors, may sue either one of the individuals against whom the action may be brought; he is not bound to prosecute all; and although a plea in abatement is permitted in case of the non joinder of debtors, the privilege does not extend to tort feasors; all are regarded as principals, and neither the omission to sue all, nor if all are sued, the dismissal of one of them from the suit, can be pleaded by the other parties in bar.

It was early held that the absolute release of one joint trespasser discharged all the rest who participated in the act, and such is still the rule. But the release pleaded as a discharge for all, that has been given to one only, must be a technical release, under seal, expressly stating the cause of action to be discharged without condition or exception. *Frink* vs. *Green*, 5 Barb.; *DeZlug* vs. *Bailey*, 9 Wend., 336; *Rowly* vs. *Stoddard*, 7 Johns., 207.

So strictly are these technicalities adhered to that no release is allowed by implication; it must be the immediate result of the terms of the instrument, which contains the stipulation, hence it is that a covenant not to sue one joint debtor or trespasser, though it operates between the immediate parties, does not extend to the others.

In the case of *Lacy* vs. *Kynaston*, 1 Lord Raymond, 689, reported also in 12 Modern, 548, it was held that a covenant not to sue was personal to the covenantee only, and could not be set up against the other joint parties. And though such covenant might operate as a release between the parties to it to avoid circuity of action, yet it could extend no further. *Farrell* vs. *Forest*, 2 Saunders, p. 48, note 1.

Now it is clear that the receipt of John Jarrell, Jr., admitted in evidence in this case, was not a technical release. It is not under seal, which is indispensable to constitute a release. A release is an estoppel to the party making it, and imports a consideration from being sealed.

Estoppels are not favored, and should not on principle be extended beyond the natural and ordinary import of the

terms used in the instrument to express the meaning and intention of the parties.

The courts in the examination of the numerous decided cases have been required to give a construction to every conceivable stipulation inserted in the agreements which have been pleaded as releases of liability, and have almost invariably pursued the same course in yielding nothing to mere. implication wherever words of release are found in the instrument. The intention of the parties is alone regarded, holding the established legal maxim that where a particular purpose is to be accomplished, and the language which expresses it is clear and certain, no general words used in the same agreement shall extend the meaning of the parties. *Thorpe* vs. *Thorpe*, 1 Lord Raymond, 235.

Dallas, C. J., in the case of *Solly* vs. *Forbes*, 2 Brod. & Bing., 46, having examined the leading cases, observes, as courts look at the intention of the parties in modern times more than formerly, rather than the strict letter, not suffering the latter to defeat the former, held that general words of release even, could not be operated to enlarge a previous statement which defined the particular object for which the agreement was made.

The same principle is found in the case of *Turpenny* vs. *Young*, 5 Dow. & Ry., 262, and is referred to and affirmed in the case of *Thompson* vs. *Lach*, 3 M. G. & Scott, 551. See also *North* vs. *Wakefield*. 13 Adolphus & Ellis, 540, and *Jackson* vs. *Stackhouse*, 1 Cowen, 123.

It is very manifest that the defendants well understood that the receipt in question could not be pleaded as a release, and therefore they sought to make it avail them as a defence to the action, and so pleaded accord and satisfaction, upon which the plaintiff took issue. As before remarked, this plea avers the satisfaction and discharge of the entire cause of action, and not simply a satisfaction and discharge of the said John Jarrell, Jr., with whom the accord is alleged to have been made, from his liability for his participation in the alleged trespasses.

The receipt however is of 75 dollars from John Jarrell,

Jr., in full of all dues, debts and demands to date. It does not state in terms against whom the dues, debts and demands are which are thus satisfied. It cannot be pretended to mean all dues, debts and demands of the plaintiff against everybody, but only of all his dues, debts and demands against somebody. The natural and ordinary import of the language used, and the nature of the transaction and the character of the instrument clearly indicate the intention of the parties, and show that the broadest interpretation that can be given to it, is satisfaction and discharge of all dues, debts and demands against the said John Jarrell, Jr., and against him only. ·

Admitting then, without now deciding the point claimed for the defendants, that the terms *all dues, debts and demands* are broad enough to cover not only the individual liabilities of the said Jarrell, but also his joint liability with the other defendants for the alleged trespasses; yet the said receipt furnishes no evidence of any satisfaction and discharge of the other parties defendant, nor any intention to do so, but on the contrary that it was the intention not to do so. And this is corroborated by the dismission of the suit against the said Jarrell and the prosecution of it against the other defendants.

Now it is well settled by the authorities, and upon sound principles, that a release not under seal of one joint trespasser or a satisfaction and discharge of the liability against him, which shows on its face that it was not the intention to satisfy and discharge the liability of the other joint trespassers will not, and can not, be allowed to work a discharge of the action. In other words that a contract or agreement not unlawful in itself and plain and express in its terms, shall not be construed, nor made to defeat the object and intention of the parties, and much less to work a result they sought to avoid.

In the case of *Jackson* vs. *Stackhouse*, 1 Cowen, 123, it was held that a release which acknowledged the receipt of one dollar in full of a certain judgment (describing it), and also in full of all debts, demands, judgments, executions and

accounts whatsoever, was restrained by the particular words, to the judgment only, and did not operate upon a mortgage between the parties.

So in the case of *McAllister* vs. *Sprague*, 34 Maine, 297, where a receipt had been given by a creditor to one of his joint debtors, which recited that the debtor had paid a certain sum in full of his half of the debt due jointly by him and another, and which was to be his discharge in full for the debt and costs in full, was no discharge of the co-debtor, it was held that such receipt and discharge constituted no defence to either in the action against both.

And in *Drinkwater* vs. *Jordon*, 46. Maine, the same doctrine is affirmed and the reason assigned "because it cannot be inferred from such a covenant that it was the intention of the parties to discharge the debt."

In *Durell* vs. *Wendell*, 8 N. H., 369, it is said "a release is an absolute extinguishment of the debt, while a covenant not to sue is not such an extinguishment, and is never a technical release and will never be construed as a release, unless it gives the covenantee a right of action, which will precisely countervail that to which he is liable, and unless also it was the intention of the parties that the last instrument should defeat the first. Courts in this way overlook the precise character of the instrument in order most readily to secure the design of the parties." Same doctrine and language by Marshall, C. J., in *Garrett* vs. *Macon*, 2 Brock., 185; 6 Call, 308. See also *Lovejoy* vs. *Murray*, 3 Wallace, 1.

In *Frink* vs. *Green and others*, 5 Barb., a writing in these words: "I hereby exonerate Alonzo Hyde from three fifty dollar notes which I hold against him and D. A. Green, (signed) A. P. Frink," was held not to be a release but only a covenant not to sue, the consideration of which might be inquired into by oral evidence, and that it could not be made a defence to Green, nor evidence to sustain such defence, though the consideration be proven.

These authorities and others too numerous to mention and explain here, do show that the receipt of John Jarrell,

Jr., can be regarded only as an agreement not to sue said Jarrell, and as an acknowledgement of the receipt of 75 dollars.    It was competent to prove by oral evidence what was the consideration of the agreement.    *Knox* vs. *Barbee*, 3 Bibb, 526 ; *Horton's appeal*, 38 Penn., 294; *Chandler* vs. *Schoonover*, 14 Indiana, 324.

As the cause of action is against all the joint trespassers the plaintiff may sue all or either of them at his election ; and he is entitled to full satisfaction, but he is entitled to but one satisfaction.    So where there are different findings in the same verdict when all the trespassers are sued, the successful party must choose *de melioribus damnis*, he cannot claim to collect all.

It follows then if the damages are satisfied in part by payment or compromise with some of the defendants, the plaintiff may still proceed against those who remain in the record.    And in such case it was but right and proper that the jury should deduct in their finding whatever sum the plaintiff had already received on account of the alleged trespasses from any of the joint parties, who were afterwards dismissed.    This would be the just application of the rule that there cannot be a double remuneration for the same wrong.

This is very distinctly stated by Judge Upham, in *Snow* vs. *Chandler*, 10 N. H., 95.    " It is," he says, " that the sum paid was not received in satisfaction of the damages, but only in part satisfaction, and the fact that it was coupled with an engagement not to sue, does not alter the case.    But to the extent of the amount paid, the defendant may avail himself of the arrangement."    See also *Merchants' Bank* vs. *Curtis*, 37 Barb., 320.

But the case of *Ruble* vs. *Turner*, 2 Hen. & Munf., 38, has been cited and relied on to show the contrary doctrine to that of the cases above referred to ; and I am free to confess that it seems not only irreconcilable with the current of authorities but untenable on principle.    It seems also in conflict with the principle of *Herrington* vs. *Hurkins*, 1 Rob., 591.    The case of *Ruble* vs. *Turner* was decided in 1808, and

the case *Garnett* vs. *Macon*, in 1825. The same point was involved in both cases, viz: whether the release of one of several joint parties discharged the rest from liability, and argued by the same learned counsel, viz: Messrs. Hay & Call, and yet there is not the slightest allusion that I have been able to discover in the latter case to the former, nor even by Marshall, C. J., who reviewed the authorities and considered the subject with his acknowledged ability and learning. It can hardly be supposed the case was overlooked. Nor have I found it relied on or approved or even noticed in any of the numerous cases decided by the courts of other States on the same subject. I feel constrained therefore to hold that it does not propound the law as applicable to this case.

Applying then the principles deduced from the authorities reviewed, I think there was no error in permitting the said receipt to go to the jury, because it was legitimate to prove how much the plaintiff had received on account of the participation of the said Jarrell in the alleged trespasses, if the evidence should show him to have been a co-trespasser, so that it might be applied by the jury to diminish their verdict by that amount against the rest of the defendants on the record.

There was no error in permitting the writ to go in evidence, for it was the proper evidence to show the existence and date of the suit and who were the original parties.

There was no error in permitting the declaration to go in evidence with the orders of dismission, for they were parts of the records of the case. But as the plea of not guilty put in issue the allegations of the declaration, and thus threw on the plaintiff the burthen of proving them, they could not be used by the defendants as evidence to prove and sustain their plea of accord and satisfaction. As to that plea and all facts necessary to sustain it the *onus probandi* was upon them, and they could not resort to the plaintiff's allegations in his declaration to aid them in it after having denied the same by their plea of the general issue. Consequently the allegation in the plea of accord and satisfaction,

that John Jarrell, Jr., was one of the joint trespassers, which was denied by the general replication, could not be proved by the allegations in the declaration that he was such joint trespasser with them, but which was denied by the plea of not guilty, and the court should so have instructed the jury if required; but as the plaintiff asked no such instruction and has chosen to rely upon his general objection to the evidence offered which was unexceptionable, as above indicated, I think there was no error in that particular of which the plaintiff can complain. But inasmuch as there was no other evidence in the cause showing the said John Jarrell, Jr., to have been a joint trespasser with the other defendants, an indispensable fact to sustain the plea of accord and satisfaction alleged to have been made with him as one of the joint trespassers, which was not proved, and the verdict on that point without evidence to warrant it, while the evidence on the general issue showed the defendants guilty. On that ground, therefore, if there had been no other, verdict should have been set aside.

The court erred in refusing to give the second, third and fourth instructions asked by the plaintiff, and also further erred in giving the fourth, fifth and sixth instructions asked by the defendants. The court further erred in refusing to set aside the verdict, because it was contrary to the evidence, and because of misdirection by the court.

The exception to the bill of exceptions as being too general and as obnoxious to the admonition given in the case of *Hood* vs. *Maxwell*, 1 W. Va., though the bill be inartificially drawn in some respects, I think the exceptions are sufficiently certain and specific to present the action of the court below in every substantial particular, and so as to enable this court to review its action intelligibly. ·

It is also objected that the concluding statement in the bill that "the foregoing was all the evidence material in the cause," is too vague and uncertain, because it was said that the opinion of the court below ought not to determine what is material and what is not. But I think this substantially like certifying the facts proved instead of the evidence; and

no material fact can be supposed to have been omitted from a bill so certified by the court, and with the presence and aid of the counsel on both sides.

I am of opinion, therefore, to reverse the judgment with costs and damages to the plaintiff in error, set aside the verdict and remand the cause to the circuit court of Wayne county for further proceedings to be had therein, in conformity with the principles above indicated.

The other judges concurred.

JUDGMENT REVERSED.