MEINECKE, Administratrix, Respondent, *v.* INTERMOUN-
TAIN TRANSPORTATION CO., Appellant.

(No. 7,414.)

(Submitted January 9, 1936. Decided January 28, 1936.)

[55 Pac. (2d) 680.]

*Mr. John K. Claxton* and *Mr. J. B. C. Knight,* for Appellant, submitted a brief and argued the cause orally.

*Mr. M. J. Doepker* and *Mr. William B. Frame,* for Respondent, submitted a brief and argued the cause orally.

320

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff, as administratrix of her deceased husband's estate, brought this action to recover damages sustained by her husband resulting from an automobile collision between the automobile in which the deceased was riding and another driven by one Torgerson, an officer of the defendant company. The deceased was injured while riding in a car along the highway leading from Butte to Anaconda in the night-time. The car driven by Torgerson collided with the rear end of the car in which the deceased was riding while both cars were proceeding in the same direction, resulting in the injuries from which the husband of plaintiff died some ten days after the collision. A trial of the case resulted in a verdict in favor of the plaintiff for the sum of $6,000, and judgment was entered in accordance therewith. A motion for new trial was made, heard and denied. The appeal is from the judgment.

On the trial of the case a witness who saw Torgerson some little time after the accident had happened, but before he had departed from the scene, after relating generally his knowledge and experience with reference to observing intoxicated persons, was questioned with reference to whether Torgerson was intoxicated. Objection was interposed on the ground that the question called for a conclusion and the proper foundation had not

been laid. The objection was overruled, and the witness answered that Torgerson was intoxicated. This ruling is assigned as error.

It is generally held that witnesses may express their opinion ██ on the question of intoxication without qualifying as experts on the subject, and that such opinions are not conclusions which the ordinary witness is not entitled to draw from his own observation. These matters are of common knowledge and observation. (*Commonwealth* v. *Barber,* 261 Mass. 281, 158 N. E. 840; *State* v. *Forsyth,* 131 Wash. 611, 230 Pac. 821; *Choice* v. *State,* 31 Ga. 424, 467; *Castner* v. *Sliker,* 33 N. J. L. 95; *State* v. *Cather,* 121 Iowa, 106, 96 N. W. 722; *People* v. *Sehorn,* 116 Cal. 503, 48 Pac. 495; *Palmer* v. *Schurz,* 22 S. D. 283, 117 N. W. 150.) In the brief it is argued that no allegation of negligence based on intoxication is found in the complaint, and therefore the admission of this testimony was highly prejudicial. The objection was not sufficiently broad to reach the contention, but prior to the testimony of which complaint is made a number of witnesses who observed Torgerson on the same evening at the scene of the accident, had testified without objection on the part of the defendant, no less than four times that they smelled liquor on his breath while engaging in conversation with him. It would appear that if evidence as to intoxication was so highly detrimental to the cause of the defendant, counsel are in no position to complain when they sat idly by and permitted various witnesses to testify on the subject without objection.

Error is assigned on the ruling of the court permitting inquiry on cross-examination of one of the witnesses for the defendant as to whether Torgerson, the driver of the car, was in a crippled condition before he received injuries in the accident. Objection was made that it was not proper cross-examination. The court agreed with the objection but permitted the witness to answer. He said that he knew that Torgerson used "a cane when he walks." Obviously the cross-examination was improper and the court should have sustained the objection, but from the record it appears that Torgerson was present in court and

testified during the trial of the cause. The witness merely said that he knew that Torgerson used a cane when he walked. If such is the fact, the jury, by using their senses, would observe the very thing to which the witness testified, and we are unable to see wherein the answer would in any way prejudice the rights of the defendant, as it only amounted to telling the jury what they would otherwise know.

During the cross-examination of one of the witnesses of the defendant it appears that counsel for plaintiff was making inquiry with reference to the custom and practice of the defendant company in securing reports of accidents. The witness said of the report, "It is then brought into the Anaconda office and turned over to the insurance company." Counsel for the plaintiff then made the following inquiry: "Do you send these reports to the office of the insurance company in Butte then?" Objection was interposed and the court said of the question which had elicited the first response: "As I understand your question, you asked what his instructions to his drivers were and he told you that the drivers reported to the insurance company?" That part of the record which relates to the turning of the report over to the insurance company is in narrative form. The objection was by the court sustained to the quoted question. It is urged that the injection of the question of insurance into the record was reversible error by appropriate specification. We have held that where the insurance company is not a party to the proceeding, ordinarily any attempt to convey to the jury the fact that a defendant is indemnified by insurance against loss arising from tortious liability is error. Our decisions on that subject are reviewed and cited in the case of *Vonault* v. *O'Rourke*, 97 Mont. 92, 33 Pac. (2d) 535, and what we there said need not be here repeated. We did in the case of *Tanner* v. *Smith*, 97 Mont. 229, 33 Pac. (2d) 547, recognize, within the circumstances of the case there under consideration and similar circumstances, that exceptions to the general rule existed which were there applied.

It is apparent, in the light of the trial court's remark, that the subject of insurance was first injected into this case by the witness testifying voluntarily, and not in response to a question by counsel for the plaintiff. The further inquiry made by counsel, while improper, did not add anything to the statement of the witness. It is generally held in most jurisdictions where similar views obtain to our own, that voluntary, unresponsive and incidental answers disclosing that the defendant carried liability insurance come within an exception to the rule, and where the subject of liability insurance thus creeps into the record, a reversal is not warranted, especially where, as here, the damages are not asserted to be excessive. (*York Ice Machinery Co.* v. *Sachs,* 167 Md. 113, 173 Atl. 240; *Smith* v. *Gould,* 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. 28; *Stevens* v. *Lepley,* 46 Ohio App. 445, 189 N. E. 260; *Goodman* v. *Guida,* 150 Misc. 677, 269 N. Y. Supp. 811; *Kiser* v. *Southard,* 162 Va. 456, 174 S. E. 682; *Webb* · v. *Hoover etc. Co.,* 138 Or. 24, 4 Pac. (2d) 631; *Huls* v. *Dalzell,* 252 Ky. 13, 66 S. W. (2d) 28; *Cannon* v. *Scarborough,* 223 Ala. 674, 137 So. 900; *Hatchimonji* v. *Homes,* 38 Ariz. 525, 3 Pac. (2d) 271; note, 95 A. L. R. 399.) Accordingly, we hold that reversible error did not result.

It is contended by numerous specifications of error that the trial court was in error in denying defendant's motion for nonsuit, and also its motion for a directed verdict, on the ground of the insufficiency of the evidence. It is argued in support of these contentions that the evidence fails to show that Torgerson, who was driving the car, was acting as an agent of the defendant company within the scope of his employment at the time of the collision.

Admittedly, Torgerson was the secretary of the defendant corporation, and the car which he was driving was licensed in the name of Torgerson Brothers, another corporation. The defendant company operated a bus depot in Butte, Montana, which was used by other bus companies. The witness O'Neil testified that he was a salesman and in Anaconda on the afternoon of November 14, 1933, the evening preceding the injury, and that

in leaving Anaconda on his return to Butte he left from the "big garage" on Main Street which is owned and operated by Torgerson Brothers. He said he was there awaiting the return of another salesman with whom he returned to Butte. Of that occasion he said: "I remember seeing Mr. Torgerson, who is sitting there beside his counsel, with two other gentlemen. I do not know who these other two gentlemen were, and if they were in court I would not know them. Q. What, if anything, called this scene of Mr. Torgerson to your mind at this time, Mr. O'Neil? A. Well, at the time I was waiting there I was to meet this gentleman to ride back with him. He told me to meet him at this garage between five and six o'clock. I was down there waiting around for him to come back, and these three gentlemen came into the garage there, and it seemed like two of the gentlemen had missed the bus, and Mr. Torgerson here said that he was going to Butte. And it seemed that these gentlemen didn't want to put him out to go over there, but he said in his conversation that he had business to take care of in Butte—that he had papers and business to take care of in the bus depot in Butte anyway, and he was going over."

Mrs. Ethel Godbout testified that on the same evening she went to the bus depot of the defendant in Butte after 6 o'clock and saw Mr. Torgerson there. She said of him at that time: "He was behind the desk and he apparently was looking at letters or something like that. There was a kind of little cubbyhole there. He was also in front of the cash register." She related that she later returned in the evening about 8 o'clock and on that occasion she saw Mr. Torgerson standing behind the cash register.

Grace Roderick testified that she knew Mr. Torgerson and was in company with Mrs. Godbout on both visits to the bus depot on that evening. She testified as to his conduct with reference to the first visit, as follows: "The first trip I made to the bus terminal Mr. Torgerson was selling a ticket and he answered the telephone, and that is all that I noticed he did." And as to the second visit, she said: "Mr. Torgerson was work-

ing around there, and I saw him opening some mail and he answered the telephone. On this second visit to the bus terminal I imagine we remained there about fifteen minutes before the bus arrived, and Mr. Torgerson was there during all that time." These ladies explained their presence in the depot bus by stating that they went there the first time to ascertain the time of the arrival of busses from Anaconda, and on the second occasion to meet a friend due to arrive by bus.

The evidence on behalf of the defendant as given by many witnesses denied all of the quoted testimony supra, with the exception that Torgerson admitted that two men accompanied him from Anaconda to Butte on the evening in question. From the testimony of Torgerson and other witnesses it appears that on the evening in question he attended a dinner party as an invited guest at a night club in Meaderville, returned to Butte after midnight and proceeded from there toward Anaconda which was his home and place of residence.

We have frequently announced the rule that on motion for nonsuit or directed verdict the evidence must be viewed from the standpoint most favorable to the plaintiff, and every fact must be deemed proved which the evidence tends to prove. No case should ever be withdrawn from the jury when reasonable men might draw a different conclusion from the evidence. (*Nangle* v. *Northern Pacific Ry. Co.,* 96 Mont. 512, 32 Pac. (2d) 11.)

In the case of *Harrington* v. *H. D. Lee Mercantile Co.*, 97 Mont. 40, 33 Pac. (2d) 553, we said: "Admitting that Thompson was the company's agent, the company cannot be held responsible for the accident. Sections 7965 and 7966, Revised Codes 1921, read as follows: 7965. 'Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his wilful omission to fulfill the obligations.' 7966. 'A principal is responsible for no other wrongs committed by his agent than those mentioned in

the last section, unless he has authorized or ratified them, even though they are committed while the agent is engaged in his service.' These sections are but declaratory of the common law. When the application of *respondeat superior* is presented, 'the decisive question in every instance is whether the agent or employee was, at the time of negligent injury, acting within the scope of his employment. If he acted independently of his employer, or was upon missions or purposes of his own, then the employer is not to be held accountable in damages.' (*Hoffman* v. *Roehl*, 61 Mont. 290, 203 Pac. 349, 350, 20 A. L. R. 189; and see *Susser* v. *Delovage*, 73 Mont. 354, 236 Pac. 1082; *Clawson* v. *Schroeder*, 63 Mont. 488, 208 Pac. 924; *Ellinghouse* v. *Ajax Livestock Co.*, 51 Mont. 275, 152 Pac. 481, L. R. A. 1916D, 836; 2 C. J. 852.)''

Admittedly, Torgerson was an officer of the defendant company. The question is fairly presented: Was he in making the trip from Anaconda to Butte (viewing the testimony in the light most favorable to the plaintiff), acting within the scope of his employment? We have detailed supra all the testimony which we find in the record which tends in any manner to establish that Torgerson was so acting in making the trip from Anaconda to Butte. The fact that Torgerson in making this trip was driving a car not the property of the defendant company and which he ordinarily used for his own personal service, will not preclude plaintiff from recovery. (Notes in 87 A. L. R. 787; 60 A. L. R. 1163; 57 A. L. R. 739.) In Blashfield's Cyclopedia of Automobile Law, page 130, it is written: ''No hard and fast rule can be laid down by which it would be possible to determine in every instance whether the driver of a motor vehicle, in the general employ of another, was acting within the scope of his employment at a given time, but rather each case is to be decided largely upon its own facts, merely keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer, or while about his business.'' We agree with the foregoing observations and the citation of decisions can only serve to illustrate the application of these

fundamental rules. Under the quoted evidence, Torgerson went to Butte at least in part on a mission for the defendant company and was apparently—viewing the evidence as we must view it—attending to some matters on its behalf in its bus depot while there.

It is urged that because he deviated from that purpose after arriving in Butte by attending a dinner party at Meaderville, he thereupon ceased to act within the scope of his employment, and if the accident had occurred while he was going to, or from, Meaderville and before his return to Butte, without question Torgerson during that period was acting without the scope of his employment (*Harrington* v. *Lee Mercantile Co.*, supra); but after his return to Butte and proceeding over the same route which he had traveled from Anaconda to Butte, he thereby resumed the prosecution of the defendant's business and was acting within the scope of his employment. (*Cummings* v. *Republic Truck Co.*, 241 Mass. 292, 135 N. E. 134; *Keebler* v. *Harris*, 120 Neb. 739, 235 N. W. 328; *Edwards* v. *Earnest*, 206 Ala. 1, 89 So. 729, 22 A. L. R. 1387; *Barmore* v. *Vicksburg, S. & P. R. Co.*, 85 Miss. 426, 33 So. 210, 3 Ann. Cas. 594, 70 L. R. A. 627; *Murphy* v. *Kuhartz*, 244 Mich. 54, 221 N. W. 143; *Orris* v. *Tolerton & Warfield Co.*, 201 Iowa, 1344, 207 N. W. 365.)

We conclude that the court properly overruled defendant's motions for nonsuit and directed verdict.

The defendant offered to prove that when this action was begun there were three defendants, namely, Torgerson, the driver of the car, Torgerson Brothers, a corporation, and the appellant, but that the other two defendants had paid the sum of $7,350 to the plaintiff in consideration of the execution and delivery of a covenant not to sue. The record does not disclose any ruling by the court on the offer; however, the proof was not admitted. Apparently by stipulation of counsel the covenant not to sue is found in the record. It was entered into by the plaintiff in her representative capacity and as an individual. It was expressly provided in this document that plaintiff in both capacities reserved her right to proceed against the

defendant company. This court in an extensive opinion reviewing the authorities, in the case of *Black* v. *Martin*, 88 Mont. 256, 292 Pac. 577, decided that contracts of such character as the one before us would not be a bar to the prosecution of this action against the defendant. Its conclusions are there stated in the following language: "Summing up, the true rule appears to be that, if the injured party has accepted satisfaction in full for the injury suffered by him, the law will not permit him to recover again for the same injury; but he is not so affected until he has received full satisfaction, or that which the law considers such. If he receives part of the damages from one of the wrongdoers, the receipt thereof not being understood to be in full satisfaction of the injury, he does not thereby discharge the others from liability."

It is argued that the court was in error in refusing to admit the offered testimony. It is generally held that testimony of this character is admissible in cases of this kind under appropriate pleadings in mitigation of damages. (*Anti* v. *Boston Elevated Railroad*, 247 Mass. 1, 141 N. E. 598; *O'Neil* v. *National Oil Co.*, 231 Mass. 20, 120 N. E. 107; *Dwy* v. *Connecticut Co.*, 89 Conn. 74, 92 Atl. 883, Ann. Cas. 1918D, 270, L. R. A. 1915E, 800; *Bloss* v. *Plymale*, 3 W. Va. 393, 100 Am. Dec. 752; *Snow* v. *Chandler*, 10 N. H. 92, 34 Am. Dec. 140; *Chamberlin* v. *Murphy*, 41 Vt. 110; *Brandstein* v. *Ironbound Transp. Co.*, 112 N. J. L. 585, 172 Atl. 580; *McDonald* v. *Goddard Grocery Co.*, 184 Mo. App. 432, 171 S. W. 650; *Bogdahn* v. *Pascagoula St. Railway & Power Co.*, 118 Miss. 668, 79 So. 844; *Balick* v. *Philadelphia Dairy Products Co.*, 5 W. W. Harr. (35 Del.) 269, 162 Atl. 776; *Finley* v. *Plante*, 52 R. I. 325, 160 Atl. 865.)

Defendant did not plead the covenant not to sue nor allege that any payments had been made to plaintiff on account of its execution, or otherwise. In order for defendant to render this testimony admissible it was necessary that some appropriate allegation be found in the answer. (*Shapiro* v. *Lyon*, 254 Mass. 110, 149 N. E. 543; *Kalloch* v. *Hoagland*, 239 Fed. 252; *San Pedro Lumber Co.* v. *Reynolds*, 121 Cal. 74, 91, 53 Pac. 410.)

However, plaintiff's objection to the offer of proof did not raise the question of the sufficiency of the pleading, but we have said in the case of *Brown* v. *Daly,* 33 Mont. 523, 84 Pac. 883: "It is not necessary to consider whether the district court erred in excluding evidence upon the particular ground urged in the objection. If the court's ruling was correct, it is immaterial that it was founded upon an erroneous reason." To the same effect are *Davey* v. *Southern Pacific Co.,* 116 Cal. 325, 48 Pac. 117, and *Patrick* v. *Superior Court,* 139 Cal. App. 1, 33 Pac. (2d) 466.

Plaintiff, however, stipulated in the trial court and again renews the same offer that one-half of the sum of $7,350 should be applied in satisfaction of this judgment. We have recognized in the case of the death of a minor that two causes of action arise, one in favor of the parents for the loss of services during minority, and another which is in favor of the minor himself which survives and may be prosecuted by his administrator. (*Burns* v. *Eminger,* 84 Mont. 397, 276 Pac. 437.) The cause of action which is here prosecuted is the action which the deceased might have prosecuted had he survived his injuries. A surviving widow on account of being deprived of the comfort, protection, society and companionship of her husband, may recover damages. Such action would be the individual action which plaintiff might prosecute as an individual. (*Mize* v. *Rocky Mountain Bell Tel. Co.,* 38 Mont. 521, 100 Pac. 971, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189.)

The cause is remanded with directions that if the plaintiff will consent to a reduction of the judgment recovered in the sum of $3,675 within thirty days after the filing of the remittitur from this court, the reduction to be effective as of the date of the rendition of the judgment in the trial court, the judgment as so reduced will stand affirmed; if not, the judgment is reversed with direction to the trial court to grant a new trial to the defendant.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.