**ST. PAUL FIRE & MARINE INS. CO. et al. v. UNITED STATES.**

No. 1332.

United States District Court,
D. Montana, Great Falls Division.

March 21, 1953.

LaRue Smith and LaRue Smith, Jr., Great Falls, Mont., for plaintiff.

Krest Cyr, U. S. Dist. Atty., Joseph G. Mudd and Frank M. Kerr, Asst. U. S. Dist. Attys., Butte, Mont., for defendant.

PRAY, Chief Judge.

This action was brought under Section 1346(b) Title 28, U.S.C. to determine whether the defendant herein is liable for the negligence of Sergeant Marshall of the Great Falls Army Air Base as hereinafter set forth. The above section refers to Chapter 171 of Title 28, or Section 2671, which provides: "As used in this chapter and sections 1346(b) and 2401(b) of this title, the term * * * 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

On the above question it has been held that the law of the place controls, and Section 2-209 R.C.M.1947, provides: "Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his wilful omission to fulfill the obligations of the principal."

An agreed statement of facts has been submitted by counsel of record in the above entitled cause for the parties to said action to be considered and acted upon by the court in lieu of a trial. Section V of the agreed statement is as follows: "On or about May 6th, 1950, Sergeant Marshall was ordered to drive a military vehicle, weapons carrier No. 2 279 190, from Great Falls Air Force Base to Ryan Dam and return. This order was issued by competent military authority, and this trip was duly and regularly authorized on official business of the United States Air Forces. Accordingly, Sergeant Marshall proceeded in said vehicle from Great Falls Air Force Base to Ryan Dam where a squadron party was held at the picnic area located at Ryan Dam approximately 15 miles North East of Great Falls Air Force Base. The squadron party ended at approximately 10:30 o'clock P. M. and

the non-commissioned officer in charge of the military personnel made an announcement over the public address system to the effect that all drivers of Government vehicles were to return to the Great Falls Air Force Base."

The order at the start was to drive from Great Falls Air Force Base to Ryan Dam and return, and the order was reiterated at the close of the squadron gathering to the effect that all drivers of Government vehicles were to return to Great Falls Air Force Base.

Paragraph VI of the agreed statement reads as follows:

"Sergeant Marshall, in returning from Ryan Dam, deviated from the route taken by the Government vehicles in going from Great Falls Air Force base to Ryan Dam. Sergeant Marshall could have crossed the Missouri River by either the bridge at 15th Street North, or the bridge at 9th Street North. He did not do either, but stayed on the North and West side of the Missouri River and crossed the river on what is known as the Central Avenue West or First Avenue North bridge thereby extending the distance required to travel by about 10 miles. When Sergeant Marshall arrived at the East Side of the Missouri River and entered the main business section of Great Falls, he then went to the barroom at the Ozark Club located at 118 Third Street South in Great Falls, Montana, arriving in that club at about 9 P. M. o'clock. Sergeant Marshall spent several hours in the Ozark Club. At about 3 o'clock A. M., on the morning of May 7th, 1950, Sergeant Marshall left the Ozark Club to return to the Great Falls Air Force Base. At this time he picked up four other soldiers in his vehicle to return them to said base. Sergeant Marshall then proceeded to First Avenue North where he turned and drove East on said Avenue toward the Great Falls Air Force Base until he reached the intersection of said First Avenue

North and Nineteenth Street. At or near this intersection, Sergeant Marshall, through his own fault, negligence and carelessness, lost control of the vehicle he was driving which turned left out of its proper traffic lane, crossed the left-hand traffic lane, crossed the boulevard, sidewalk and front lawn of the property of the plaintiff, Martha E. Brand, and collided with and upon the front porch of the residence of said plaintiff. At the time of this accident Sergeant Marshall was driving under the influence of intoxicating liquor at an excessive rate of speed."

Was the injury to plaintiff's property caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, or, being a soldier, in line of duty, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred? (From Section 1346(b) Title 28, U.S.C.). The above section also refers to Chapter 171, Title 28, or Section 2671, which says: " 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

To accept the plaintiff's version the court must find from the facts that Sergeant Marshall was acting within the "scope of his office or employment" and "acting in line of duty."

The Montana law, Section 2–209, R.C.M.1947, makes the principal responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business.

To begin with, the Sergeant disobeyed two separate and distinct orders from competent military authority to return to Great Falls Army Air Base, instead he drove ten miles out of the way, in the

opposite direction on his own mission to a drinking resort where he remained for about six hours, becoming intoxicated, and later on, about 3:00 a. m. that morning while driving under the influence of liquor at an excessive rate of speed, caused the accident under the circumstances and in the manner set forth in paragraph VI of the above quoted agreed statement of facts.

Was the use of the vehicle at the time of the accident, and for several hours prior thereto, in the service of the employer, or while transacting his business at the time of the negligent injury was he acting within the scope of his employment and in the line of duty, or had he been acting in disobedience of his orders, independently and upon a mission of his own? See decision of Chief Justice Callaway in Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40, 33 P.2d 553, and cases therein cited.

The deviation here from the course ordered on two occasions by competent military authority would seem to have been marked and a wide departure, and it should not be difficult to determine that the driver of the vehicle in going ten miles out of his way in the opposite direction to indulge for hours in drinking in a barroom was so great a deviation from the master's business as to show conclusively that he was on his own mission, and when he finally started back towards the base he was still in a drunken condition and still on his own and irresponsible and in wrongful use of the vehicle at 3:00 o'clock in the morning. Of course, after leaving the Ozark barroom he had to go some place and if he had any sense of direction left would naturally go towards the Base where he was employed and where the automobile belonged, but the facts show that after hours of drinking at the Ozark Club, which he had reached by a wide circuit, he finally returned to the Base by a different and much longer route than he would have taken had he obeyed the officer's orders to return from the dam to the Base, and such drunken driving as resulted in the accident would not have occurred.

There is found here an entirely different state of facts than was present in the Meinecke case, last cited in brief and relied upon by plaintiffs. Meinecke was secretary of the defendant company and went to Butte on business of the company and, after transacting the business at the company's Butte office, went out to a dinner party—nothing to show that there was anything unusual about this—and after dinner he returned to Anaconda by the same route he traveled on coming to Butte. There is not much if any deviation in going to Meaderville for dinner than there would have been in dining nearer the center of the business district, near the bus depot, where the secretary had transacted business for his company, and besides no accident occurred then and he was not under orders from the company or limited in time as to where he should return or what route he should take. The Court said in the Meinecke case: "When the application of respondeat superior is presented, 'the decisive question in every instance is whether the agent or employee was, at the time of negligent injury, acting within the scope of his employment. If he acted independently of his employer, or was upon missions or purposes of his own, then the employer is not to be held accountable in damages.'" Meinecke v. Intermountain Transp. Co., 101 Mont. 315, 327, 55 P.2d 680, 683. In the above quotation the court was referring to the Harrington-Lee case aforesaid.

In the Johnson case, U. S. v. Johnson, 181 F.2d 577, 581, the court of appeals for the Ninth Circuit held: " * * * 'It is the established rule in this jurisdiction that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have

been directly or indirectly serving his master.'" It is quite evident that no "nice inquiry" is involved here, or that Marshall was either directly or indirectly serving his master.

Many authorities have been cited by both sides and able arguments presented, but the court is convinced under the law and the facts in this case that no liability for the negligent driving of the Army vehicle by the driver Marshall can attach to the defendant herein; consequently, judgment will be awarded in favor of the defendant, with costs. Findings and conclusions and form of judgment may be submitted accordingly. Exceptions allowed counsel.