PRISCILLA JOHNSON *et al.*, Appellants, *v.* EDWIN W. PARCELS, Respondent.

1. *U. S. land warrants — U. S. land patents — Patentee dead at time of issue, patent relates back to date of enlistment — Dower.*— Where a land warrant issued from the United States to a soldier for services in the war of 1812, and the patent therefor was made out in his name but after his death, under the acts of Congress (5 U. S. Stat. at Large, 31, 497), the patent will relate back to the date of his enlistment; he will be held to have died seized of the land, and his widow will be entitled to her dower therein.

2. *Military bounty warrants are real estate.*— Military bounty land warrants have always been considered real estate, and go, upon the death of the holder, to the heirs at law, and not to the executors or administrators.

*Appeal from Adair Circuit Court.*

*Ellison & Ellison*, and *Harrington & Cover*, for appellants.

I. A United States land warrant is real estate and descends to heirs. (Reader *et al.* v. Barr *et al.*, 5 Ohio, 458 ; Brush v. Ware, 15 Pet. 93; 3 Opinions of At.-Gen. 382 ; Public Lands, Laws and Instructions, 63–5, 176, 184.) If the warrant is real estate the defendant has dower in it.

II. Henry Calvin Skinner gets the land by descent and not by purchase. (Hackler's Heirs v. Cabel, Walker, Miss., 91 ; Lessee of Bond v. Swearingen, 1 Ohio, 182 ; Douglas v. McCoy, 5 Ohio, 526 ; Schedda v. Sawyer, 4 McLean, 181.)

III. The patent issuing after the death of Uriah W. Skinner is not void. (5 U. S. Stat. at Large, 31.) But such patent is only evidence of already existing title. (Hackler's Heirs v. Cabel, *supra.*)

IV. And such patent relates back to the act of Congress

granting the land, or at least to the termination of Uriah W. Skinner's services as a soldier in the war of 1812. (Hackler's Heirs v. Cabel, *supra;* 2 Washb. Real Prop. 619.)

V. Uriah W. Skinner was seized of the land in fact by relation during his life, by virtue of the act of Congress of May 20, 1830. (5 U. S. Stat. at Large, 31; Jackson v. Winslow, 2 Johns. 80; Jackson v. How, 14 Johns. 405; 2 Hill, 303; Crowley v. Wallace, 12 Mo. 143; Landes v. Brandt, 10 How. 348, 373; Barr v. Gratz, 4 Wheat. 213; Cavender v. Smith, 5 Clarke, Iowa, 157; 3 Green, Iowa, 349; Rogers v. Brent, 5 Gilm. 573; Frost v. Beekman, 1 Johns. Ch. 297; Butler & Baker's case, 3 Rep. 35.)

*Barrows & De France,* and *Willan & Gilstrap,* for respondent.

Calvin Skinner procured the lands by purchase and not by descent. Uriah died without locating the land under the warrant. Under the act of Congress (5 U. S. Stat. at Large, 497) "the heirs or legal representatives" of the soldier are merely those who are next entitled to the benefit of the grant in their own right under the law; not derivable from the warrant which may have been issued and had become inoperative. The act was not designed to create a law of descent of title not yet attached to land. (See § 2.)

The act under which the certificate of reissue was granted is an independent act, not a continuation of the act under which the original warrant was issued, and operated as a new grant to the heirs of deceased soldiers embraced in its provisions; and the same right to locate 160 acres which Uriah would have in his life, was vested by law in his next of kin in his own right.

Uriah W. Skinner had no such seizin in the land as to entitle his widow to maintain suit for dower. (1 Scribn. Dower, 251 *et seq.;* Co. Litt. 31 *a*, 37 *a*; *id.* 468, 681; Park. Dower, 304, 370; Bac. Abr., tit. Dower, 75; Sir W. Jones, 361; 2 Blackst. Com. 131; 4 Kent, 37; Miller v. Wilson, 15 Ohio, 108; Rands v. Kendall, 15 Ohio, 671; Firestone v. Firestone, 2 Ohio St. 415; 1 Washb. Real Prop. 179, 181; Burris v. Page, 12 Mo.

358 ; 3 Bac. Abr. 208 ; 7 Mass. 253 ; 23 Pick. 84 ; Wagn. Stat. 538 ; Wells v. Moore, 16 Mo. 478 ; see also Collins v. Brannin, 1 Mo. 540 ; Thomas v. Wyatt, 25 Mo. 24.) The act of Congress of May, 1836, does not conflict with this doctrine. See also 31 Mo. 188, and cases cited.

The doctrine of relation does not aid appellants. There was no estate *in esse* to which it could apply. Uriah Skinner had simply a privilege of locating 160 acres of land somewhere within a certain time, but failed to locate it. His widow could have no interest in the land, for immediately on his death, his rights by reason of his services, survived and vested absolutely in his descendants in their own rights.

WAGNER, Judge, delivered the opinion of the court.

From the record in this case it appears that one Uriah W. Skinner was a soldier in the service of the United States, in the Thirty-fifth regiment of infantry, in the war of 1812, and as such was, under the acts of Congress, entitled to 160 acres of land ; that afterward, on the 27th day of March, 1829, a land warrant was issued to him, and in April of the same year he was married to the plaintiff, Priscilla, and they lived together until 1834, at which time he died, and she has since married Henry Johnson, who is made a plaintiff herein.

On the 11th day of January, 1847, the warrant was located on a tract of land in Adair county, under an act of Congress approved July 27, 1842, and on March 5, 1847, a patent was issued in the name of said Uriah W. Of the marriage the only issue born was Henry Calvin Skinner, who survived his father, and McNair was appointed his curator, and under certain proceedings sold his interest in the above described land to one Good, who conveyed to Parcels, defendant. The plaintiff instituted this suit for the purpose of obtaining dower in the premises, and the court below decided that she was not entitled to recover. The only question, therefore, is whether Uriah W. in his lifetime had such a seizin or estate as authorized her to be endowed. It was said in the argument that she had received a third of the proceeds of the

sale of the land, but the record fails to show any such fact, and she positively denies it.

The acts of Congress whence the title to the land emanated, provided for giving, among other bounties, to soldiers who should enlist, 160 acres of land, to be designated, surveyed and laid off at the public expense, in such manner and upon such terms and conditions as might be provided by law. (2 U. S. Stat. at Large, 669, 672.) Congress first prescribed that the land above designated should be located within certain defined limits and within a restricted period. But the limit was extended from time to time, and applied to other lands, till finally, by act approved July 27, 1842 (5 U. S. Stat. at Large, 497), it was enacted that in all cases for bounty lands for military services in the war of 1812, with Great Britain, which remained unsatisfied at the date of that act, it should be lawful for the person in whose name the warrant was issued, his heirs or legal representatives, to enter at the proper land office, in any of the States or territories in which the same might lie, the quantity of public lands subject to private entry to which the said person should be entitled in virtue of such warrant, in quarter-sections.

The act also allowed further time to complete the issuing and locating of military land warrants by continuing in force certain prior acts on the same subject, and provided that the certificate of location should not be assignable, but the patent should in all cases issue in the name of the person originally entitled to the bounty land, or to his heirs or legal representatives. Another act on the subject declares that "in all cases where patents for public lands have been issued or may hereafter be issued, in pursuance of any law of the United States, to a person who has died, or who shall hereafter die, before the date of such patent, the title to the land designated therein shall inure to and become vested in the heirs, devisees or assignees of such deceased patentee, as if the patent had issued to the deceased person during life." (5 U. S. Stat. at Large, 31.)

It is insisted for the defendant that Henry Calvin Skinner, the heir, took as a purchaser, and that, therefore, no right of dower could attach in the plaintiff. But it is difficult to base this claim

on any substantial ground. The patent issued by authority of the act of Congress, and the act of Congress was founded on a consideration directly moving from Uriah W. Skinner, the patentee and ancestor. It directly said to him, if you will enlist and perform certain military services, the government will give you as a bounty 160 acres of land. He accepted the proposition, executed his part of the contract, and the land warrant was accordingly issued to him. Henry Calvin gave no consideration, entered into no contract of purchase, and simply acquired title because he was heir. All the title that he possessed he derived from his ancestor.

This question has several times passed through judicial review in the tribunals of the country, and in all instances, so far as I have been able to learn, the courts have held that the heir takes this character of title by descent and not by purchase. (Hackler v. Cabel, Walker, Miss., 91 ; Bond's Lessee v. Swearingen, 1 Ohio, 182.)

The language of the act of Congress, it seems to me, is plain, and clearly expresses the intention had in view by the law-makers. It is that when, in pursuance of law, a patent has issued or may issue to a person who has died before the issuance of the patent, the title to the land designated therein shall inure to and become vested in the heirs, devisees or assignees of such deceased patentee, as if the patent had issued to the deceased person during life. This clearly shows that a descent of the premises was contemplated. Had the person lived and the patent been issued to him during his lifetime, the act would have been useless ; for the land would have descended to the heir, devisee or assignee in the very manner directed. But, being dead, the law relates the title back to the time when he was living, and, for all the purposes of descent and distribution, invests him with title.

Military bounty land warrants have always been considered as real estate, and go, upon the death of the holder, to the heirs at law, and not to the executors and administrators. Such has been the uniform view held and practiced by the general government. (3 Op. At.-Gen. 382.)

In the case of Wells v. Moore, 16 Mo. 478, it was held that

under the act of Congress of March 3, 1843, a widow was not entitled to dower in land to which her husband had a mere right of pre-emption, which had not been consummated at the time of his death. The act of March 3, 1843, under which the decision was made, enacted that "in any case where a party entitled to claim the benefits of any of the pre-emption laws, shall have died before consummating his claim, by filing in due time all the papers essential to the establishment of the same, it shall be competent for the executor or administrator of such party, or one of the heirs, to file the necessary papers to complete the same, provided that the entry in such cases shall be made in favor of the heirs of the deceased pre-emptor; and a patent thereon shall cause the title to inure to the said heirs, as if their names had been specially mentioned."

When the pre-emptor dies, the law makes the original grant to the heirs. A pre-emption interest in lands is not an estate of inheritance. The pre-emptor's right is merely to purchase at a fixed price within a limited time, to the exclusion of others. He may be unable or unwilling to purchase at the price or by the time mentioned in the law, and the land may then be sold to others. These conditions annexed to his possession show clearly that he is not invested with an inheritable estate. Again, where the papers have not been filed by the pre-emptor in his lifetime, the executor or administrator, or the heir, is clothed with the duty of completing the same, and there is no recognition of the widow's right to dower. It is obvious that no part of her dower interest in the estate of her husband could be taken to pay the purchase of the pre-emption claim, and it would therefore have to be paid out of the balance of the estate.

The two cases are wholly unlike and present no similarity whatever. In the case at bar the heir takes a descendible estate, as if there was a seizin in fact on the part of the ancestor; in the other case, when certain acts are performed by the executor or administrator or heir, there is an original grant to the heir.

There is another principle which is invoked in this case, and that is the doctrine of relation. Mr. Cruise, in his work on Real Property, says: "There is no rule better founded in law, reason

and convenience than this : that all the several parts and ceremonies necessary to complete a conveyance shall be taken together as one act, and operate from the substantial part by relation."

In Magwire v. Tyler, 40 Mo. 406, we held that patents issued by the United States government relate back to the first or inceptive act in the series of concurrent acts which are necessary under the law to complete the conveyance.

In Landes v. Brandt, 10 How. 348, the title in question was an imperfect one in the original claimant under the Spanish government, and the creditor of the one holding this title seized and sold it on execution, and subsequent to this the United States confirmed the title to the original claimant. It was held by relation that he was the real owner when the sale was made, and consequently the purchaser at the sheriff's sale held the land against the devisee of the original claimant. The same doctrine is announced in Barr v. Gratz, 4 Wheat. 213.

But courts will not apply the doctrine of relation when, by so doing, they will work injustice to the rights of innocent parties, acquired between the events which it is proposed thus to unite by relation, nor by making that tortious which was lawful originally.

A deed made in pursuance of a previous contract to sell, may, as between the parties to the same, relate back to the date of the contract; but it will not be allowed to do so to the injury of intermediate innocent purchasers, or strangers who have acquired an interest. (3 Washb. Real Prop. 277; Frost v. Beekman, 1 Johns. Ch. 297; Vancourt v. Moore, 26 Mo. 92.)

Now if we apply the doctrine laid down by Cruise, that all the several parts and ceremonies necessary to complete a conveyance shall be taken together as one act, and operate from the substantial part by relation, we find that the enlistment into the military service by Uriah W. Skinner, and the promise by the government to give him 160 acres of land, were the substantial parts. In the language of this court, they constitute the first or inceptive acts, and the patent must relate back to them, according to the rule laid down in Magwire v. Tyler and Landes v. Brandt.

No question of innocent purchase can arise in this case, for the record shows that Good purchased the premises as the land of

Henry Calvin Skinner, and this deed was regularly recorded long before the land was conveyed to Parcels. Parcels, then, purchased with full knowledge; and if he was negligent in inquiring into Skinner's title, any loss he may suffer he must attribute to his own want of watchfulness and care.

The result is that the plaintiff is entitled to dower in the land mentioned in the petition, and the judgment must therefore be reversed and the cause remanded. The other judges concur.