FRANK GRIFFIN, Respondent, v. DANIEL PEMBROKE, Appellant.

Kansas City Court of Appeals, January 6, 1896.

**Malicious Prosecution**: UNMAILABLE MATTER: THEORY OF DETERMIN-ING. In an action of malicious prosecution for charging before a United States commissioner the plaintiff with sending through the

Griffin v. Pembroke.

United States mails an unmailable postal card, the court should determine, as a matter of law, whether the postal card comes within the prohibition of the statute without hearing evidence as to how the sender intended it or how the addressee understood it, the only issues being whether the card is mailable and the sender deposited it in the mails.

*Appeal from the Nodaway Circuit Court.*—HON. CHAS. F. BOOHER, Special Judge.

REVERSED.

*Dawson, Duffy* and *W. C. Ellison* for defendant.

(1) The court erred in permitting the plaintiff, Griffin, to testify over the objection of the defendant as to his purpose or meaning in writing and mailing the postal card in question. It was wholly incompetent for the plaintiff to testify that he intended no reflection on, or threat to, the defendant. Nor was it competent for him to explain or interpret the meaning thereof. The plaintiff is not permitted to show that he did not intend to commit a crime. *Brennan v. Tracy,* 2 Mo. App. 540. (2) The meaning of the language used must be determined from an inspection of the card alone. It must speak for itself. No extraneous fact unconnected with the mailing of the card is admissible for the purpose of determining its character. *United States v. Brown,* 43 Fed. Rep. 135. It was equally erroneous to permit plaintiff to testify as to the contents of a letter he claimed to have written to the defendant after the mailing of the postal card, in explanation thereof. No extraneous matters are admissible for the purpose of adding to, or subtracting from, the meaning of the language used. *Ibid.*

*James C. Growney* for respondent.

(1) The rule is well settled in this state that when a cause has been tried by the court without a jury the

appellate court will not review the finding if there is any substantial evidence to support it. The finding is conclusive in such case on the revisory court. . *Swayze v. McBride*, 34 Mo. App. 414; *Gaines v. Fender*, 82 Mo. 509; *Rice v. Arnold*, 58 Mo. App. 97. (2) Malice may be inferred from want of probable cause, and is an inference of fact, and defendant's conduct relates back and is strong evidence of both malice and want of probable cause. *Kennedy v. Holladay*, 25 Mo. App. (1 pt. 3) 512. Also, see letter written to Beach by Pembroke, March 17, 1891, while case in United States court was pending against Griffin. (3) The evidence clearly shows that Pembroke had a fixed purpose,—to arrest Griffin. *Hill v. Palm*, 38 Mo. 21; *Pipkin v. Hauke*, 15 Mo. App. 373. He, Pembroke, had a guilty mind. (4) The letter read in evidence, as shown by appellant's brief, from Pembroke to Beach, was admissible in evidence and material, as tending to show the animus of the prosecution. *Christian v. Hanna*, 58 Mo. App. 37.

GILL, J.—This is an action for malicious prosecution, tried before the circuit court without the aid of a jury, wherein plaintiff had judgment, and defendant appealed.

The prosecution complained of was begun before a United States commissioner, before whom the plaintiff, Griffin, was charged with unlawfully depositing a certain nonmailable postal card in the United States mail addressed to the defendant, Pembroke. On the back of the card the following appeared:

"MY DEAR SIR:—It is with regret that I once more ask you to take your choice. I will vindicate myself if I live. The truth, and the whole truth must come out.

"Respectfully, FRANK GRIFFIN."

Mr. Griffin admits that he wrote the postal exactly as alleged. He admits that he addressed it to "Father Daniel Pembroke," and that he deposited it for mailing in the postoffice at Maryville, Missouri, on the date alleged.

At the preliminary examination, the United States commissioner seems to have decided that there were reasonable grounds for the charge and Griffin was accordingly bound over to appear before the United States district court. When, however, the cause was brought before the grand jury "no true bill" was found and Griffin was discharged.

For several years after the introduction of the United States postal card, so many abuses of its use had intervened, that congress undertook to correct the evil, and in the year 1888 passed an act, the substance of which, in so far as concerns our present inquiry, provides: "That all matter otherwise mailable by law upon the envelope or outside cover or wrapper of which, or any postal card upon which any delineations, epithets, terms of language of any indecent, lewd, * * * scurrilous, defamatory or threatening character, or calculated by the terms or manner or style of display, and obviously intended to reflect injuriously upon the character or conduct of another, may be written or printed * * * are hereby declared nonmailable matter, etc. * * * and any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be nonmailable matter, * * * shall for each and every offense, upon conviction thereof, be fined not more than five thousand dollars, or imprisoned at hard labor not more than five years, or both, at the discretion of the court."

At the trial of this cause the lower court, over the defendant's objections, admitted certain evidence tending to prove that in sending the postal card Griffin in

fact intended no threat or imputation on the character of Pembroke, that his purpose was harmless, and that Pembroke knew that fact. And as further showing the theory upon which the case was tried, the court, in determining whether or not mailing the postal card was an offense under the statute, declared it to be its duty to consider the words thereon written, in the light of all the circumstances in evidence, and decide therefrom in what sense they were used; "and if the court, sitting as a jury, believe from the evidence, facts and circumstances in proof, that before the commencement of the prosecution against plaintiff, defendant knew that the words written on said postal card did not contain any threat against him and were not intended in a harmful or threatening sense, but in a harmless sense, then and in that case defendant had no probable cause for said prosecution of the plaintiff."

It will be thus seen that the trial judge entertained the idea that however threatening or abusive may be the matter written on the postal card, yet if the writer did not *so intend* it, and the party addressed *knew* it was not so intended, then the sender, or party mailing the objectionable card, would be guilty of no offense. This was an erroneous theory of the law. To adopt it would, in many cases, subvert the manifest purpose of the statute, which was to protect the good name and character of the party from threats and reflections published by means of an open mail. It is of no consequence how the writer and addressee may understand the language thus openly addressed to him—the statute is concerned only with what others may think of it. Such open communications are deposited in a public office; may be seen, and are, indeed, frequently seen and read by parties handling the mail matter, beginning with the officers and clerks in the postoffice, down to parties who may get it from the office and

hand it over to the addressee. As well said by defendant's counsel, this statute takes no notice of the covert meaning intended. It asks not the question how did the party mailing the postal *intend* it, nor how did the party addressed *understand* it; but the law is concerned in what way it may be understood by the postal clerks, the carriers, children and neighbors, through whose hands the offensive card may pass.

From these considerations, then, it clearly appears that the court erred in admitting letters which had passed between the parties, and other circumstances of an explanatory character, whereby it was attempted to show that the language of the postal card, though threatening in character, was not so intended by Griffin and not so received or understood by Pembroke. Whether or not the postal card in question was nonmailable matter and came within the prohibition of the statute, should have been determined by an inspection of the writing thereon. "The design and intention must appear from that and not from extrinsic facts averred or shown." *U. S. v. Brown*, 43 Fed. Rep. 135.

Casting aside, now, these irrelevant, extrinsic facts which had no place here and which were foreign to the legitimate issues involved, we come to a consideration of the one fact on which this case turns, to wit: Did defendant Pembroke falsely charge plaintiff Griffin with an offense under the federal postal law? If he did not make a false accusation; if, in other words, Griffin did violate the law, as charged, then clearly he can not maintain an action for malicious prosecution, for the very groundwork of such an action must be that the plaintiff was innocent of the matter charged against him.

The statutory offense consists of knowingly depositing in the mail any postal card, etc., whereon is written or printed language of a "threatening charac-

ter, or calculated by the terms or manner or style of display, and obviously intended to reflect injuriously upon the character or conduct of another." The matter of this postal card was certainly of a threatening character and appears as intending to reflect injuriously on the character or conduct of defendant Pembroke. The manifest meaning, or at least such as would be understood by a third party unacquainted with the facts or circumstances under which it was written, is that the addressee is given his choice of doing or saying something, or else submit to some damaging exposure. On the postal was written: "It is with regret that I once more ask you to take your choice. I will vindicate myself if I live. The truth and the whole truth must come out. (Signed) Frank Griffin." Would not an ordinary observer conclude, after reading this, that Griffin had knowledge of some conduct on Pembroke's part, which, if disclosed, would reflect on the character of the latter, and which he (Griffin) would expose unless Pembroke should "take his choice?"

In *United States v. Brown, supra,* the defendant was held to have violated the statute by mailing a letter on the envelope of which, "Excelsior Collection Agency" was printed in bold type, and not connected with the instructions to return if not called for. It was, says the court, "obviously placed there to attract attention and reflect delinquency in making payments upon the person sent to."

In *United States v. Bayle,* 40 Fed. Rep. 664, speaking of the extent of this statute, Judge THAYER says: "It was not only declared that libelous, scurrilous and defamatory matter written on postal cards, or on envelopes containing letters, shall not be disseminated through the mails, but that no matter of a threatening character, or that is even calculated * * * and * * * intended to reflect injuriously upon character or con-

duct, shall be so disseminated, if written on postal cards, or on the envelopes of letters, and hence is open to public inspection."

Whether or not the postal card or envelope comes within the prohibition of the statute, is a question of law to be determined only by the court on an inspection of the matter thereon written or printed. The party mailing the matter will be deemed to have intended a threat or reflection on the addressee, if the writing is subject to that construction; and it makes no difference whether he in fact intended it so or not, or whether or not the party addressed so understood it. Indeed, it is immaterial whether or not the addressee should ever receive the postal, or even hear of it. The offense consists in depositing such matter in the mails, regardless of these extrinsic facts.

In our opinion the plaintiff, Griffin, violated the provisions of the federal law in mailing the postal card in question; he was guilty of the offense charged against him, and hence has no case for a malicious prosecution.

The judgment in plaintiff's favor will be reversed.