T. E. WARREN, Respondent, v. HUGH FLOOD, Appellant.

Kansas City Court of Appeals, November 22, 1897.

1. Malicious Prosecution: PROBABLE CAUSE: DEMURRER. Whether there is probable cause in cases of malicious prosecution is a mixed question of law and of fact; and where the essential facts are undisputed the court should declare the law upon them; and on the facts in this case the court finds there was probable cause and holds that a demurrer should have been sustained.

2. ———: ACTING ON ADVICE OF PROSECUTOR. If the complaining party states the facts fairly and fully to the prosecutor and such officer incorrectly determines that such facts constitute a certain crime and proceeds to formulate the necessary papers to set on foot a prosecution for such crime, the complaining party is not liable since the fault is not his but that of the prosecutor.

3. ———: BAD CHARACTER OF PLAINTIFF. Where in an action for malicious prosecution for charging plaintiff with robbery defendant knows of the bad character of the plaintiff, such knowledge tends to strengthen defendant's belief in the truth of the charge.

*Appeal from the Clinton Circuit Court.*—HON. W. S. HERNDON, Judge.

REVERSED.

*H. T. Herndon* and *M. B. Riley* for appellant.

(1) Where the facts are not controverted the question of probable cause is one of law. *Christian v. Hanna*, 58 Mo. App. 37; *Thomas v. Smith*, 51 Mo. App. 605; *Boogher v. Hough*, 99 Mo. 183; *Hill v. Palm*, 38 Mo. 14. (2) Advice of counsel that the plaintiff was

Warren v. Flood.

guilty of the charge preferred against him, is a suffi-
cient justification in an action for malicious prosecu-
tion.   In such case there is probable cause.   *Fugate v.
Miller*, 109 Mo. 281; 14 Am. and Eng. Ency. of Law,
53, note and cases there cited.

*E. C. Hall, T. W. Walker* and *Witten & Hughes*
for respondent.

(1) The question of probable cause must be left
to the jury.   *Sparling v. Conway*, 75 Mo. 510.   (2) It
is for the jury to say whether defendant stated all the
material facts to his counsel or prosecuting attorney.
*Johnson v. Miller*, 19 N. W. Rep. 310.

ELLISON, J.—This is an action for malicious pros-
ecution.   Plaintiff recovered below.   The facts neces-
sary to state are these:   Defendant had
STATEMENT.      plaintiff arrested for highway robbery.
The charge was dismissed.   The case involves the ques-
tion of probable cause as well as the further question
as to defendant's being liable for a mistake of the
prosecuting attorney in charging a robbery.   Defend-
ant had employed plaintiff to cut and shock, in a cer-
tain manner, a lot of corn.   Plaintiff performed some
of the work.   A dispute arose between them as to pay-
ment for the work.   Defendant claimed that from the
way the work was done he did not owe plaintiff any-
thing.   Plaintiff claimed he should have $1.25.   They
met one or more times, but separated without settle-
ment.   Finally plaintiff was at work for one Swearin-
gen, and while he and Swearingen were scraping out a
pond, defendant drove up for the purpose of buying
some potatoes from Swearingen.   The plaintiff testified
that defendant did not speak to him; that when he re-
turned to his wagon after looking at the potatoes he,
plaintiff, told him he "wanted the money, or I would

thresh him or he would thresh me. I swore at him a little bit; I needed the money. He asked me what I wanted. I told him he knew what I wanted, and he said leave it to Commodore Swearingen to settle. I told him Commodore did not know anything about it. He commenced shaking; got a dollar out of his hand, this way, and he said he did not have any change; I told him I guess we could change it. I told him I ought to have a dollar; he said he thought 75 cents was enough. Well, I said anything will do to settle." In another portion of his testimony plaintiff denied having an open knife in his hand during the conversation. Said he had had his knife fixing a wooden pin but shut it and walked up to defendant, and "told him I would thump hell out of him if he did not pay me."

The defendant's version of the matter was as follows:

"Commodore Swearingen and he were scraping out a pond; when I went in I went up where they were. I stopped and spoke and told Mr. Swearingen my business, and we went off to transact our business; I tied my team up by the fence in the timber, and Warren still scraping at the pond when I went up, and when I come back and was unhitching the team, Mr. Swearingen started to go back to his work—and he come, Warren come tearing around in front of me, with a knife in his hand; he said, 'Now, God damn you, I have got you where I want you, get down in your jeans and shell her out.' I said 'what do you mean?' He said, 'I want that money, you know what I want, just run in your pocket and get her out' and he kept repeating it and kept walking up with the knife in his hand (could not tell whether it was open), I said, how much do you want? He said, a dollar and a quarter. I said, for that corn you cut? I said you never finished out a shock row of corn; if

you had finished out a shock row, I would not owe you a dollar and a quarter until you do. He said, shell her out, I said I don't think I ought to give you a dollar and a quarter for it; he said then, how much? I said from the way you cut and what work you done there, if you was working right and fair you would not get over seventy-five cents for it anyhow, he said, give me seventy-five cents, all the time he kept the knife in his hand down by his hip, I could not tell whether he had it open, I did not expect anything else but what he was going to cut me with the knife. I did not look for anything else; I got out the money, I hadn't only a dollar in change, I had no smaller change than a dollar; I got Mr. Commodore Swearingen to go to the house and get the change, and he brought back the change and gave Warren seventy-five cents.''

Swearingen testified in plaintiff's behalf that ''he (plaintiff) did not say he would rip him open; he said he would knock the side of his head off, or something of that kind. He did not have his knife open; he had his knife in his hand, where he had been fixing a chain, and just had his knife in his hand; he did not say he would rip him open, at all.'' He was asked whether ''Flood was very trembly when he handed the money out, his hand shook like a palsied man?'' and answered: ''Well, some little, yes, sir.''

Defendant on the next day went into Plattsburg, the county seat of Clinton county, and placed the matter before the prosecuting attorney. That officer advised him to have plaintiff arrested for robbery and went with him to a justice of the peace whose office was near by. The prosecutor asked the magistrate to write out an affidavit charging plaintiff with robbery. The magistrate did so and defendant swore to it. A warrant for plaintiff's arrest was then made out and delivered to an officer. Plaintiff was arrested and

was imprisoned for a time before the case was dismissed. It is well enough to state in this connection that plaintiff was first arrested in October. The sheriff, it appears, accepting the assurance of his employer that he would bring him to the county seat that day, did not take him in charge. He did not appear. He was finally located in December and arrested by the sheriff, taken to the sheriff's house, where he staid all night and after breakfast next morning, as the sheriff expressed it, he again "skipped out." He was next "located" and arrested the following April. And, as before stated, the case was dismissed.

We have stated that defendant placed the facts fully before the prosecuting attorney and was advised by him that he should have plaintiff arrested for robbery. This is not formally conceded. But we think it a fully established fact. Defendant so testifies. The magistrate before whom the proceedings were had testified that the prosecutor came into his office with defendant and requested him to write the affidavit charging plaintiff with robbery. The testimony of the prosecuting attorney is mostly uncertain and indefinite. He stated that he had so many matters of similar kind that he dismissed them from his mind as soon as determined. That this defendant and the magistrate knew better about it than he. We think that to take the prosecutor's testimony as a whole, connected with the conceded facts and the evidence of defendant and the magistrate, there is not a particle of doubt but that defendant stated the matter to the prosecuting attorney substantially as he stated it at the trial of this case and that the prosecutor advised the prosecution.

Since the case charging robbery was dismissed, we will assume plaintiff was not guilty of such offense. The

Warren v. Flood.

MALICIOUS prose-
cution: probable
cause: demurrer.

question then is, was there probable cause for defendant to believe him guilty? In our opinion, as we said in *Nolen v. Kaufman*, 70 Mo. App. 651, "the evidence of probable cause, as it is known to the law, is so overwhelming in defendant's behalf as to call for our interference with the judgment." Indeed, we find nothing whatever in the record to overcome or neutralize the showing of probable cause made by defendant. Plaintiff himself testified to matters showing that he at least forced defendant to pay him the seventy-five cents through fear of immediate bodily punishment. The evidence establishes without dispute that plaintiff approached defendant with a knife in his hand and with much abuse and savage threats frightened him into handing money to plaintiff which he did not intend to pay him and which he claimed he did not owe him. It can be seen from the record that questions were made at the trial whether defendant stated that plaintiff approached him with an open knife or approached him with a knife which defendant could not tell was open or shut, seeing only the handle; and whether plaintiff stated to defendant that he would cut the side of his head off, or knock it off. It is not expected that one who is advising with a lawyer as to a redress of grievances, or a prosecuting attorney as to a supposed crime, should be able to repeat the transaction *word for word, act for act, in the precise* way in which it occurred. This would hardly be possible. So we say it is of no consequence in this case whether defendant told the prosecutor the knife was open or that he didn't know whether it was open. The opening or closing the blade would not make or unmake the crime charged. And so of the question whether he would cut defendant's head off, or knock it off.

In our opinion the entire evidence shows that defendant placed the facts as they occurred before the prosecuting attorney, and that such attorney on this statement of the facts advised defendant to institute the prosecution and aided him in procuring the papers necessary to the prosecution. This being true it made a case of probable cause for defendant and the judgment against him was wrong. *Sharpe v. Johnston*, 59 Mo. 557.

It is of no consequence in such case that defendant may have been moved by malice toward plaintiff; for "no malice, however distinctly proved, will make the defendant liable." *Sharpe v. Johnston*, 76 Mo. 660; *Christian v. Hanna*, 58 Mo. App. 42. Whether there is probable cause in cases of malicious prosecution is a mixed question of law and fact; and where the essential facts are undisputed the court should declare the law upon them. *Boogher v. Hough*, 99 Mo. 183; *Christian v. Hanna, supra; Hill v. Palm*, 38 Mo. 14. It therefore should have been declared in this case, as requested by defendant, that plaintiff could not recover.

2. But there is another phase of the case, properly arising on the record, which is equally fatal to the judgment. By finally dismissing the complaint it seems to have been determined that the facts stated to the prosecutor did not amount to, or constitute robbery. In such case the rule is that if the complaining party states the facts fairly and fully to the proper officer and such officer incorrectly determines that such facts constitute a certain crime and proceeds to formulate the necessary papers to set on foot the prosecution the complaining party is not liable, since the fault is not his, but that of the officer. *Leigh v. Webb*, 3 Esp. 164; *Hahn v. Schmidt*, 64 Cal. 284; *McNeely v. Driskill*, 2

Blackf. 259; *Newman v. Davis*, 58 Iowa, 447; *Armstrong v. R'y*, 46 La. Ann. 1448; *Bartlett v. Brown*, 6 R. I. 37. This we believe to be the view of the supreme court of this state. *Boeger v. Langenberg*, 97 Mo. 390. In that case it is said that: "The complainant is responsible for the complaint he actually makes and for such action thereon as may be lawful and proper in view of it." It is true there are some general statements made in connection with the foregoing as to the "suggestion or intervention of the complainant," and also as to the complainant assisting in writing out the warrant, which may tend to lessen the force and meaning of the language quoted. But it was doubtless not intended to be understood as stating that mere clerical assistance the complainant might render the officer, at the latter's request and under his direction, would affect the liability of the complainant. In *Bartlett v. Brown*, *supra*, Brown (the complainant) was a man unlearned in the law, and, believing that the plaintiff, in taking some growing fruit off his trees, had committed larceny, when in fact he was only guilty of a trespass, stated the facts to an attorney who advised a prosecution, and in directing the charge to be made by a "misrecollection of the statute concerning growing fruit" had it charge that plaintiff "feloniously stole" the fruit. Of this the court said:

"There is no evidence which leads us to suspect that the defendant, a laboring man, doubted, or had cause to doubt, the soundness of the legal advice given to him, or suspected even when he signed and swore to the complaint prepared for him by a professional man, that there was a misnomer of the offense therein charged. To the defendant, then, it was a case of apparent guilt of theft, believed by him to be real; and this, according to the resolution of the judges, reported to the House of Lords by Lords Mansfield and Lough-

borough in the case of *Johnstone v. Sutton*, 1 T. R. 544, will not support an action for malicious prosecution, even though the most express malice be proved in the prosecutor. In other words, though there be malice, there is probable cause; and the former must concur with the want of the latter, to the maintenance of the action."

In that case the person advised with was not an officer. The case at bar ought to be much stronger for the complainant, since he consulted with the lawyer whose duty it was to advise concerning and to institute criminal proceedings.

3. It appears by testimony in defendant's behalf, which was not contradicted, that plaintiff is a man of bad character and that the defendant knew he was. The tendency of this fact was to add to or strengthen defendant's belief that plaintiff was endeavoring to compel him to part with his money. Newell on Malicious Prosecution, 304, 273.

——: bad character of plaintiff.

The judgment, with the concurrence of the other judges, is reversed.