## JOHN J. McDONALD, Respondent, v. GODDARD GROCERY COMPANY, Appellant.

**Kansas City Court of Appeals, November 23, 1914.**

1. **COVENANTS NOT TO SUE: Release: Joint Tort.** A covenant not to sue one or more of several wrongdoers, is not a release and does not discharge the other.

2. **RELEASE: Satisfaction.** A release of one joint tort-feasor will discharge the others, but a covenant not to sue one of several, where full satisfaction for the wrong is not received, is not a release.

3. ————: **Single Tort-feasor: Discharge.** A covenant not to sue a *single* wrongdoer is, in effect, a release or discharge, to avoid circuity of action.

4. ————: **Written Acknowledgment: Construction: Reservation.** Where a written paper acknowledges receipt of a sum of money from two of a number of tort-feasors, not in satisfaction of the wrong, and reserves the right to proceed against the others it is a covenant not to sue and is not a release.

5. ————: **Construction: Intention.** In construing a writing to ascertain whether it is a release or a covenant not to sue, the intention of the party, made manifest in the writing, should overcome all technical rules of construction.

6. **MALICIOUS PROSECUTION: Bankruptcy.** Malicious prosecution may be maintained for the institution of a proceeding in bankruptcy, but the evidence must show both malice and want of probable cause.

7. ————: **Malice: Probable Cause.** In an action for malicious prosecution though malice be shown, if there was probable cause no recovery can be had.

8. ————: **Advice of Counsel.** In an action for malicious prosecution advice of counsel will negative malice.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

REVERSED AND REMANDED.

*Eugene S. Wilson, John Brennan, Jr.,* and *Higbee & Mills* for appellant.

*Thos. F. Gatts* for respondent.

ELLISON, P. J.—Plaintiff's action is for the malicious prosecution of a bankruptcy proceeding against plaintiff by the several defendants herein. The judgment in the trial court was for the plaintiff.

The action was begun in 1910. Before it was tried, on the 2nd of October, 1912, plaintiff accepted $50 from two of the defendants (Youle and Bozarth) in consideration of which he agreed to dismiss the action as to them, but reserved the right to continue to prosecute as to the others. The agreement was put in writing and is as follows: "It is hereby stipulated and agreed that so far as the defendants J. W. Youle and J. R. Bozarth are concerned, this cause shall be dismissed as to them and the same will not be further prosecuted as against the said J. W. Youle and J. R. Bozarth, and that the further prosecution of this case shall be against the defendants Goddard Grocery Company and J. Schotten. The plaintiff only hereby agrees to dismiss this action as to J. W. Youle and J. R. Bozarth and agrees not to further prosecute as to them, reserving the right to further prosecute this case against the Goddard Grocery Co. and said J. Schotten and not acknowledging, which has not been paid, any satisfaction in this cause of action against any of the defendants herein, but simply covenants not to further prosecute this action against J. W. Youle and J. R. Bozarth at any time. This agreement is made in consideration of the sum of fifty dollars ($50) paid by J. W. Youle and J. R. Bozarth."

• The remaining defendants insist that as plaintiff's claim is based on a joint wrong, this paper is a release of a part of the wrongdoers and therefore, in legal effect, became the release of all. The trial court refused to take that view, and adopted that of plaintiff to the effect that the paper was merely a covenant not to

184 Mo. App.—28

sue those defendants, leaving the cause of action intact against the others.

A wrong jointly committed by several makes each liable for the entire injury, for which there is but one satisfaction; and therefore a release of one is a release of all.   And where a sum is received from one or more of several wrongdoers, not in full satisfaction, but in consideration of the injured party agreeing not to sue, it is not a release at all; it is merely a covenant not to sue those paying.   By so doing he does not release any of them, but only his remedy against those with whom he covenants.   He may still successfully sue all, leaving the right to those with whom he made the covenant to sue him thereon: Lacy v. Kinnaston, Holt, 178.   That case is several times reported: 1 Lord Raymond, 688, 2 Salk. 573 and 3 Salk. 298; 12 Mod. 548, and is adopted by Lord KENYON in Dean v. Newhall, 8 T. R. 168.   If one covenants with a *single* wrongdoer not to sue, this is in effect his discharge, for if he then sues him he can turn around and sue the covenantor in damages on the covenant in identical amount and therefore, so as to avoid circuity of action, the covenant not to sue a single wrongdoer is a discharge of the action, since there is nothing left against any other person.   But not so where there are others left to whom the cause of action applies.   The rule is illustrated in this way in 3 Salk. 298, supra: Where W. R. enters into an obligation to H. S. who covenants never to sue W. R.; if afterwards he does sue upon it, W. R., to avoid circuity of action, may plead the covenant in bar to the action, for H. S. by his covenant has deprived himself of all remedy he can have upon the bond; "but if W. R. and R. W. were jointly and severally bound in a bond to H. S., who covenants never to sue W. R. upon that bond, this is no release or defeasance of the bond, neither can it be pleaded in bar if an action should be brought on it, because it doth not discharge the right, but only the

remedy against W. R., for he still hath a right of action against R. W., the other obligor; therefore, if he (the obligee) should bring an action of debt upon this bond against W. R., he is put to his action of covenant against the obligee, which would not lie if this covenant was a release, because a release to one obligee is a release to both.''

This rule, coming to us from early times, is recognized with practical unanimity today. Why should an injured party not be allowed to receive a portion of his compensation for an injury from some of the wrongdoers, without discharging the others? There is no more hindrance to freedom of contract in this than in any other instance. The parties to such a contract knew that if the covenant not to sue was violated the covenantees could have their action for the breach, in which they would recover the damages flowing from such breach. The other wrongdoers had no cause to complain, for in fact it was a relief to them, since, as there can be but one satisfaction, whatever was paid by the covenantees lessened their liability that much.

But now, since the statute (Sec. 5431, R. S. 1909) allows contribution after judgment between wrongdoers, it may be said the others have an interest in seeing that no injustice is done them by a settlement with a part at a less sum than would have been their contributory share had they been defendants in the judgment. The answer to this is, that the injured party now has a right to omit any wrongdoer from the action. The wrongdoers sued have no right to demand that all be included in the action, so as to increase the contributors to the payment of the judgment, and thereby lessen their burden. If, therefore, the injured party may let a part of the wrongdoers go free and hold the others for his full injury, why should he not be allowed to receive part compensation for his injury from one or more, of the wrongdoers without

discharging the others, especially when he does not increase, but lessens, the burden of such others.

So there being no legal disability upon the right to deal with a part without releasing the others, and there being no wrong done to those not released, there would seem not to be a semblance of reason in the statement that a covenant not to sue a part will operate as a release of all, when that was not intended.

The cases above cited from the English courts have been consistently followed to the present time with the exception, so far as we have seen, of Nicholson v. Revill, 4 A. & E. 675, and that was overruled in Thompson v. Lack, 3 C. B. 540, and other cases. In Duck v. Mayeu, 2 L. R. Q. B. Div. (1892) 511, the court recognizes as "clear law, that a release granted to one joint tort-feasor, or to one joint debtor, operates as a discharge of the other joint tort-feasor, or the other joint debtor, the reason being that the cause of action, which is one and indivisible, having been released, all persons otherwise liable thereto are consequently released." But the court continues: "*We have found no case* in which it has been held that a covenant not to sue releases a joint tort-feasor; and in our judgment the principle upon which it has been held that such a covenant does not release a joint debtor applies to the case of a joint tort-feasor." (Italics ours.) The court then goes on to state that the character of the instrument is determined by the *intention* which it discloses.

In this country the same rule has been stated in nearly all the States. It is put in these words in Mason v. Jouett, 2 Dana (Ky.) 107: "A covenant never to sue a sole obligor, will, to avoid circuity, be deemed a release of the obligation. But a similar covenant with one of several joint obligors, should not be construed as a release of even the covenantee; because such an interpretation would frustrate the intention of the parties and operate unjustly; for, if one of the joint ob-

ligors be released, no suit could be maintained against the others; and the inconvenience and circuity incident to a suit on the covenant for a breach of it would be far less unjust, and would be much more consistent with the intentions of the parties, than the constructive exoneration of all the joint obligors. In such a case, therefore, such a covenant will not be deemed a release." Again the rule is affirmed in Illinois: Chicago v. Babcock, 143 Ill. 358 and in C. & A. Ry. Co. v. Averill, 224 Ill. 516. In the latter case it is said at page 522, that "The legal effect of a covenant not to sue is not the same as that of a release. A covenant not to sue a sole tort-feasor is considered in law a discharge and a bar to an action against him, but the rule is otherwise where there are two or more tort-feasors and the covenant is with one of them not to sue him. In such case the covenant does not operate as a release of either the covenantee or the other tort-feasor, but the former must resort to his suit for breach of the covenant and the latter cannot invoke the covenant as a bar to an action against him."

In Gilbert v. Finch, 173 N. Y. 455, there is found a clear statement of the rule with a full review of the authorities. It is stated as page 463, that "In England, the modern authorities appear to be quite uniform upon the question. They are to the effect that, as between joint debtors and joint tort-feasors, a release given to one releases all, but if the instrument contains a reservation of a right to sue the other joint debtor or tort-feasors, it is not a release, but in effect is a covenant not to sue the person released, and a covenant not to sue does not release a joint debtor or a joint tort-feasor."

In Ellis v. Esson, 50 Wis. 152, the same decision is made. We quote: "Certainly the receipt of a partial satisfaction from one of two joint tort-feasors is no injury to the other who is afterwards sued for the trespass. On the other hand, it is to his benefit, as

he has the advantage of what was paid by his associate in the wrong in reducing the judgment against him. The party injured is under no duty to the joint wrongdoer to proceed at all against his associate, and his refusal to proceed against him is no ground of defense. As it is wholly optional with the injured party to proceed against one or two wrongdoers for the whole of his damages, there is no equity in holding that, because he has received a part satisfaction for his injury from the one not proceeded against upon an agreement not to sue him for the wrong, the other may set up such receipt as a complete defense to the action. He is benefited, and not injured, by such proceeding.''

That view is adopted literally in Louisville & E. Mail Co. v. Barnes, 117 Ky. 860, where like statements are quoted and approved from Snow v. Chandler, 10 N. H. 92, and Lovejoy v. Murray, 3 Wall. 17.

It will be found frequently stated in the foregoing cases, that there is no difference in principle whether the question concerns joint debtors or joint wrongdoers, and in examining the question as applied to the former we find the same unanimity of opinion: Price v. Barker, 4 El. & Bl. 760; Bateson v. Gosling, L. R. 7, C. P. 9 (1871); Green v. Wynn, L. R. 7, Eq. 28 (1868), affirmed on appeal in L. R. 5, Ch. App. Cases 204; Solly v. Forbes, 2 Brod. & B. 38; North v. Wakefield, 13 Q. B. 536. Among many other American cases we cite the following: Rowley v. Stoddard, 7 Johns. 207; Catskill Bk. v. Messenger, 9 Cowan 37; Couch v. Mills, 21 Wend. 424; Northern Ins. Co. v. Potter, 63 Cal. 157; Parmelee v. Lawrence, 44 Ill. 405, 410-414; Hale v. Spaulding, 145 Mass. 482; Bradford v. Prescott, 85 Me. 482, 486, 487; Benton v. Mullen, 61 N. H. 125.

Against this array of authority we have been cited to only three cases of consequence. The first is McBride v. Scott, 132 Mich. 176. That case does support defendant, but it is, itself, without support. It is true

other cases expressing the same view are cited in the opinion, but they have ever since (with few exceptions) been ignored, or have been overruled. The principal of these is Ruble v. Turner, 2 Hen. & M. 38, decided by the Supreme Court of Appeals of Virginia in 1808. The agreement executed by Ruble and construed in that case was: "I do hereby acknowledge, that Joel Motley's paying my expenses at Mount Relief with Captain Alexander Hunter shall be satisfaction for the part he, the said Motley, took in an assault and battery committed upon me at said Mount. Provided this shall not be considered as any satisfaction in favour of Joseph Nunn, Stephen Maynor, James Turner, or Archibald M'Nanny, who were guilty of the same at the same time and place." The decision is that it was a release of all notwithstanding the provision that it should not be. That court, as is evidenced by the reports, generally made free use of English authorities, and it is worthy of remark that the English cases to the contrary are all overlooked and no authority from any source is cited. Subsequent to that case a like question came before Chief Justice MARSHALL in Garnett v. Macon, 2 Brock. 185 (S. C., 10 Fed. Cases 12) who wholly ignored it and took precisely the opposite view. The Chief Justice said that in none of the cases "does the obligation contain any other party than him with whom the covenant is made. In all of them, the covenant, if broken, gives a right of action to the parties bound in the obligation, and the measure of their damages is given by the recovery of the obligee in his suit against them. If A is bound to B in an obligation, and they enter into a covenant, stipulating that it shall never be put in suit, notwithstanding which, B puts it in suit, this breach of covenant gives A an action against B, in which he must recover in damages, precisely the sum to which the judgment obtained by B may amount. To avoid circuity of action, this covenant may be pleaded as a re-

lease. Thus far the cases go, and if there be one which goes further, I have not found it.'' The Chief Justice then proceeded to recognize the law as stated in the English authorities cited herein. There is also cited in McBride v. Scott, two cases from the appellate division of the Supreme Court of New York (Brogan v. Hanan, 55 App. Div. 92, 66 N. Y. Supp. 1066, and Mitchell v. Allen, 25 Hun. 543). Neither of these are in harmony with a long line of cases from that State and each of them was overruled in Gilbert v. Finch, 173 N. Y. 463. There is also cited Gilpatrick v. Hunter, 24 Maine 18, which was a straight release of one party without reservation, and is wholly unlike the one in the present case. There is also cited Gunther v. Lee, 45 Md. 60. The paper there construed was on its face a release *in full* ''from all our claims of every description'' for the wrong; ''hereby abandoning and acknowledging ourselves to be full paid and satisfied for all and singular the trespasses complained of by us.'' That was held to be what it says, a clear release of all claims, and it was said that a reservation at the close, that it should not prejudice claims against others, was necessarily noneffective. In neither of the other cases cited in the McBride case (Brown v. Kenchelo, 3 Cold. and Ellis v. Bitzer, 2 Ohio, 89) was there a reservation of right against the remaining wrongdoers.

In view of the foregoing authorities, to which could be added many more, did space permit, it may be stated as the rule that if the injured party releases one joint tort-feasor he will discharge all, yet a covenant not to sue *is not a release* and it could not be pleaded by the covenantee in bar of an action by the injured party against him and the other wrongdoers. He would have to submit to the suit and be remitted to his action on the covenant, as has been pointed out above. Where there is no release or satisfaction, especially where the right of action against the others is reserved, there is no discharge of such others. There

is no reason why the intention of the parties should not govern, and through all the authorities, there is seen a purpose to discover what was intended. Chief Justice MARSHALL in discussing the question in Garnett v. Macon, 2 Brock. 185 (S. C. 10 Fed. Cases 12) said, "The common rule of law, and it seems also to be the rule of reason, is, that words shall subserve the intent." Of course one's unlawful intent will not prevail; as if he should, in fact, receive full satisfaction from one, he kills his claim and could not recover it it again from others, whatever he intended. And by reference to the cases in this State, it will be seen that even as to wills and deeds, all technical rules of construction as to the character of an estate, devised or conveyed, will be overcome by the intention of the testator or grantor clearly expressed. Otherwise we would be giving technicality superior place to manifest intention.

It thus appears that the Michigan case is not in line with authority and we are brought to a consideration of the question from the standpoint of the decisions in this State. Three are cited by defendant (Dulaney v. Buffum, 173 Mo. 1; Hubbard v. Ry. Co., 173 Mo. 249 and Shippey v. Kansas City, 254 Mo. 1). Three others (Arnett v. Mo. Pac. Ry. Co., 64 Mo. App. 268; Judd v. Walker, 158 Mo. App. 156; Lumber Co. v. Dallas, 165 Mo. App. 49, 53) are cases where the question was considered at length by this court and the St. Louis Court of Appeals. We decided the question again at last term, Hawkins v. Ry. Co.

The cases from the Supreme Court are not applicable. In the first there was a settlement with two defendants and a paper executed as in "full settlement and satisfaction of all claims and demands set up or referred to in the petition so far as said two defendants are concerned." The two defendants were concerned in the entire cause of action and each was liable for all. The court held, full satisfaction having

been received, the other defendants were discharged. In the second, there was a straight and unqualified written release. In neither case was there any reservation, or qualification, a prominent feature in the release now under consideration. Both cases were considered by Judge NORTONI in Judd v. Walker, supra, and clearly shown not to be applicable to this case. So they were considered by the Supreme Court of Kentucky and held not to be opposed to the views we have herein expressed. East Mail Co. v. Barnes, 117 Ky. 860.

The remaining case from the Supreme Court referred to above concerned the effect of an agreement not to sue, or as expressed by the court, "not to further pursue the other defendants." That case was against Kansas City for personal injury charged to have resulted to the plaintiff by reason of the city's negligence. There is a statute (Sec. 9801, R. S. 1909) declaring that where a person is liable with the city and the latter is sued for negligence, it is given the right to require the plaintiff to make such person a party defendant and that when so required the plaintiff shall not further prosecute his suit against the city unless he makes such person a party. Notwithstanding this statute, the plaintiff, after other defendants had been made parties, executed a written agreement with them that in consideration of $200 paid to her by them she would not prosecute the action against them. She reserved the right to continue the prosecution against the city. In these circumstances the city took the position that by reason of the statute disabling the plaintiff from further prosecuting an action until those jointly liable to the action were made parties, the release of those parties was in the face of the statute, and hence the city was not liable. There were other questions decisive of the case but on this point the court per Roy, Commissioner, said: "Without deciding the point, we are inclined to hold that the in-

strument by which plaintiff·agreed not to further pursue, the other defendants would bar her under section 9801, Revised Statutes 1909, from any judgment against the city if it had been a fact that any cause of action then existed against any of the other defendants.'' From this statement it is manifest that the question we are now considering was in no way concerned, or considered. We decided at last term that in the condition contemplated by the statute, the city would be discharged. The statute was then attacked as being in conflict with the constitution and we transferred the case to the Supreme Court for decision.

The foregoing considerations made it necessary to rule that defendants were not released by the paper in evidence and the demurrer to the evidence was properly overruled.

We pass to the next question presented. If one with malice and without probable cause institutes an ordinary civil suit against another, the latter may maintain an action for malicious prosecution, and there need not be a seizure of the person or property. [Smith v. Burrus, 106 Mo. 94; Brady v. Ervin, 48 Mo. 553; 19 Am. & Eng. Ency. of Law, 652.] For the greater reason one may maintain an action against another for instituting bankruptcy proceedings against him, maliciously and without probable cause, even though his property is not seized. Proceedings in bankruptcy are drastic and their effect is much more disastrous to the defendant than an ordinary civil suit. It destroys his ·credit and, for the time, ends his business life. [Wilkinson v. Goodfellow Shoe Co., 141 Fed. 218; Stewart v. Sonneborn, 98 U. S. 187, 201; Muller v. Nugent, 184 U. S. 1.]

The evidence must show both malice and a want of probable cause for the prosecution of the proceedings, and we think there was enough in the present case to submit to the jury.

Defendants submitted an instruction to the effect that if they, in good faith, advised with counsel and placed all matters before such counsel which could be reasonably known, and the advice received was that plaintiff had committed acts of bankruptcy, then the prosecution was not malicious. But there was interlined in said instruction, over the protest of defendants, that advising with counsel must have been "without malice." If the advice to be protective must be sought by him who has no malice, there is nothing for the act of taking the advice to destroy and so the decisions that advice negatives or disproves malice would be rendered useless. The instruction, as amended, in effect, reads that if defendant without malice took the advice of counsel, then there was no malice in the prosecution of the bankruptcy proceeding. This requires a reversal of the judgment.

Probable cause will justify the institution of proceedings against another, even though it is done in malice. If malice and probable cause both exist, the institution of the action is justified, for it takes the presence of the former and the absence of the latter, to sustain an action for malicious prosecution. Hence it is often said that it makes no difference how great the hatred and malice, if there is probable cause, no action lies. [Sharpe v. Johnston, 59 Mo. 557; Sparling v. Conway, 75 Mo. 510; Stubbs v. Mulholland, 168 Mo. l. c. 74; Warren v. Flood, 72 Mo. App. 199.]

Advice of counsel asked in good faith in instances where the proceedings are dismissed negatives malice. [Sharpe v. Johnston, 76 Mo. 600, 674; Stubbs v. Mulholland, 168 Mo. l. c. 76, 77; Sparling v. Conway, supra.]

The great number of instructions given for either side create much confusion. They should be materially lessened on retrial. The great number makes it impracticable, within reasonable limits, to analyze each objection. We can only suggest that the parties go

over them and on retrial endeavor to cure what may be considered well founded objections.

The judgment is reversed and the cause remanded. All concur.