## MORRISON v. COOMBS.
### No. 1489.

District Court, D. Maine, S. D.
Aug. 24, 1938.

Nathan W. Thompson, of Portland, Me., for libelant.

Job H. Montgomery and A. R. Gillmor, both of Camden, Me., for libelee.

PETERS, District Judge.

After this case was decided by me by an opinion, filed June 29th, a motion for a re-hearing was made and granted, and a re-hearing had; but I am still of the opinion that the libelant is entitled to have the matter referred to an assessor to determine the damages.

The re-hearing was granted on account of the claim made by the libelee that he was misled by· the language of the libel and surprised by the evidence in support of it. The libel claimed damages for negligence in the operation of the steamer Castine by the libelee as engineer and part owner. The evidence showed no negligence on the part of the libelee personally but he was held liable as a partner of his brother, the captain, in the ownership and operation of the vessel. At the second hearing full opportunity was given the libelee to produce any evidence he had to negative the partnership, or that affected the case in any view the libelee or his counsel took of it, and there was no misunderstanding of the issue, as the court had filed an opinion basing the finding of liability solely on a partnership.

At the first hearing, when the libelee believed that he could not be held liable unless personally negligent he testified fully and frankly as to the facts upon which a finding of partnership was made; in part as follows:

"Q. I am talking about the Castine now. Did you and your brother Leighton W. Coombs own the Castine together? A. Yes. That is what we did. In her last days.

"Q. At the time of this accident you and your brother owned her together? A. Yes, sir.

"Q. And did you each divide up the profits, as there were any made? A. According to what she netted; aside from her expenses, each trip.

"Q. After you paid the expenses you divided up the profit that there was left? A. Yes; if there was any.

"Q. If you lost money you divided up the loss? A. Yes, sir.

"Q. And that is the way you were operating the boat on that particular day, is it not? A. Yes, sir.

"Q. Now which one of you made the arrangement with the Grange? A. My brother, Captain Leighton W. Coombs.

"Q. Do you remember what the arrangement was regarding the carrying of the Grange that day? A. I remember it exactly.

"Q. What was it? A. We were to take the Grange from Camden by way of Rockland to Vinalhaven on June 8th, 1935, if the weather was expedient to go.

"Q. That was the agreement you had? A. Yes. With the man who chartered the boat.

"Q. Do you remember what the price was? A. Sixty dollars.

"Q. For the day's trip? A. Yes, sir.

"Q. And you and your brother were to supply the full crew and all the supplies for running the boat? A. We were to supply the crew and the coal and everything."

The libelee in his answer, also on oath, said that he was part owner of the steamer on the day of the accident.

After the opinion was filed holding that the testimony by the libelee himself, with the other evidence, made the brothers partners in the operation of the vessel at the time of the accident, there being also no evidence to the contrary, the libelee again testified, at the re-hearing, and, with equal frankness, said that he did not tell the truth at the first hearing; that the steamer was not owned by him and his brother but by his brother alone; that he had conveyed his interest to his brother some time before the accident; that they did not operate the vessel together, sharing the profits and losses, as he first stated, but that he was simply hired by his brother as engineer at $100 per month. No confirmatory evidence whatever was offered in support of this totally different story by the libelee. No bill of sale of his interest in the vessel, no record of one and no suggestion that such a thing was ever seen by any living person. No proof that any payments were made on the basis of a monthly wage.

The libelee presents two wholly contradictory statements, one made when he thought his interest was not affected, and the other after he found that his first story made him liable, in the opinion of the court.

Comment is almost unnecessary. The court is given the choice of the two different stories of the libelee. The circumstances of the second make it far less believable than the first.

In justification of the action of the court in taking no action for the obvious contempt it should be said that the age and somewhat shaken condition of the libelee due to the wrecking of the vessel and financial losses were taken into consideration.

From evidence offered at the re-hearing it appears that the libelant has received from the estate of the other partner involved, Leighton W. Coombs, the sum of one thousand dollars for which she gave a covenant not to sue his estate or make any claim against it on account of injuries sustained by the libelant's intestate at the time of the accident, agreeing to indemnify and save harmless said estate against any expense as a result of any such suit brought against it for such injuries to or for the death of her intestate but "expressly reserving * * * all rights to proceed against any other person or persons to recover for said injuries or death"; further agreeing to deliver to said estate a full release of all claim, in case she settles with any other person her claims for injuries or death of her intestate.

The libelee contends that the giving of this covenant to one operates as a release of the other joint wrongdoer and estops the libelant from maintaining this action.

It is true that a release of one joint tort feasor, or a settlement with him, releases all.

One satisfaction or a release is a bar to further claims for the same injury; but the libelant here has not acknowledged full satisfaction nor has she released her right of action. She has, for a consideration, claimed to be a part only of her damages, waived the right to sue one of two wrongdoers. This does not estop her from asserting her right against the other.

If the libelant had released her right of action or received full satisfaction for the injury she would have nothing left to base a suit on, but such is not the case. She will have to give credit for such part of her damages as she has received but she has not estopped herself from recovering the balance from any other person liable. McDonald v. Goddard Grocery Co., 184 Mo. App. 432, 171 S.W. 650.

"The execution of an agreement not to sue one joint tort-feasor, unless the claim is satisfied, does not operate as a release of the other joint tort-feasor." The Thomas P. Beal, D.C., 298 F. 121, 122; Pacific States Lumber Co. v. Bargar, 9 Cir., 10 F.2d 335.

The libelee urges that the proceedings before the steamboat inspectors should not have been admitted in evidence at the first hearing and asks the court to disregard them. The court admitted that evidence to be considered only so far as admissible. The finding of the inspectors that the captain was guilty of negligence is simply their conclusion and was and is wholly disregarded. There was ample evidence of neg-

ligence outside of the testimony before the inspectors.

I am unable to see any reason why this matter should not be sent to an assessor to ascertain the damages. In rendering judgment, any amounts already received by the libelant will be taken into account.